UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS CALLEN, COURTNEY CALLEN and GOLDEN POLAR BEAR, LLC,<br><br>                    Plaintiffs,<br>          v.<br><br>ILKB LLC, MICHAEL PARRELLA, RYAN HEALY and SCOTT FERRARI, each individually, and ILKB TOO, LLC, DANIEL CASTELLINI, and SHAUN YORK, each as successor by merger to ILKB LLC.<br><br>                    Defendants. | Civil Action No. 2:20-cv-03345<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Thomas and Courtney Callen and Golden Polar Bear, LLC (each a "**Plaintiff**" and collectively, the "**Plaintiffs**"), by and through their attorneys, Ice Miller LLP, as and for their second amended complaint ("**Complaint**") against the above-captioned defendants (each a "**Defendant**" and collectively, the "**Defendants**") allege, upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is an action by Plaintiffs, former franchisees of ILKB LLC ("**ILKB**"), against ILKB and its principals and officers, Michael Parrella, Ryan Healy and Scott Ferrari (each a "**Principal Perpetrator**"), who dominated and controlled ILKB using it as an instrumentality to defraud and otherwise damage the Plaintiffs and other similarly situated franchisees. Plaintiffs assert claims against ILKB and the Principal Perpetrators (collectively, the "**ILKB Defendants**") for fraud, negligent misrepresentation, violation of the New York State Franchise Sales Act, violation of the Colorado Consumer Protection Act, and breach of contract in connection with Plaintiffs' purchase of a franchise for a kickboxing studio known as "iLoveKickboxing." Plaintiffs also seek a declaration that each of the Principal Perpetrators are

liable for ILKB's obligations to the Plaintiffs pursuant to alter ego, veil piercing and agencies theories.

2. Plaintiffs' claims were initially commenced against the ILKB Defendants on or about February 26, 2019 in an arbitration proceeding currently pending before JAMS Resolution Center pursuant to an arbitration provision in the franchise agreement at issue which was executed between Plaintiffs and ILKB on the basis of misrepresentations made by the ILKB Defendants. Defendants have since expressly and willfully failed and refused, and continue to fail and refuse, to comply with their obligations in order for Plaintiffs' arbitration to proceed. Therefore, Plaintiffs must proceed before this Court. As a result of ILKB Defendants' unlawful conduct, Plaintiffs have been injured in an amount to be proven at trial but in excess of $900,000. Absent judicial intervention, Plaintiffs do not believe ILKB Defendants will cease their fraudulent conduct or repay the funds improperly or unlawfully taken and withheld.

3. Plaintiffs additionally seek a declaration that each of ILKB TOO, LLC, Daniel Castellini and Shaun York (collectively, the "**ILKB TOO Defendants**") are liable for ILKB's obligations to the Plaintiffs pursuant to successor liability based on their recent representations of a de facto merger. Subject to their ongoing investigation and discovery into this matter, Plaintiffs reserve the right to amend the complaint.

## THE PARTIES

*A. Plaintiffs*

4. Plaintiffs, Thomas Callen and Courtney Callen (collectively, the "**Callens**") are each individuals who, at all relevant times, reside in and are citizens of Colorado and are former franchisees of an "iLoveKickboxing" studio located at 750 Garden of the Gods Rd, Unit 104, Colorado Springs, Colorado. Golden Polar Bear, LLC is a limited liability company through which they conducted some of the business of the franchise.

2

5. Plaintiff, Golden Polar Bear, LLC is a Colorado limited liability company through which the Callens conducted business of their "iLoveKickboxing" franchise. The Callens formed Golden Polar Bear, LLC for that purpose and because of and in reliance upon ILKB Defendants' representations. At all times, Golden Polar Bear, LLC's sole members are Thomas Callen and Courtney Callen and they directed Golden Polar Bear, LLC's activities. Its principal place of business is at all times located at 12219 Bandon Drive, Colorado Springs, Colorado. The Callens' formation of Golden Polar Bear, LLC, as well as the actions taken and losses incurred by the Callens in their personal capacities and in their capacities as members of Golden Polar Bear, LLC were all intended and foreseeable consequences of the ILKB Defendants' breaches and fraudulent misrepresentations and omissions.

### *B. Defendants*

6. On information and belief, Defendant, ILKB LLC is at all times relevant a New York limited liability company with an office located at 1844 Lansdowne Avenue, Merrick, New York and has its principal place of business within this district. At all times prior to the merger alleged herein, Michael Parrella was ILKB's sole member as well as an officer, director, executive and/or manager of ILKB. On information and belief, following the merger alleged herein, Michael Parrella, Daniel Castellini, and Shaun York, directly or indirectly through ILKB TOO, LLC, (i) are each members of ILKB, (ii) each retained economic interest in and control over ILKB, and (iii) each are officers, directors, executives and/or otherwise play a role in management of the ILKB business. ILKB is at all times relevant the franchisor of "iLoveKickboxing" franchises, which are fitness facilities dedicated to kickboxing, a form of physical fitness.

7. On information and belief, Defendant, Michael Parrella ("**Parrella**") is a citizen and resident of New York residing in this district.

3

8. On information and belief, Defendant, Scott Ferrari ("**Ferrari**") was at all relevant times an officer, President and Director of Franchise Development at ILKB LLC and is a citizen and resident of the State of New York residing in this district.

9. On information and belief, Defendant, Ryan Healy ("**Healy**") was at all relevant times a franchise representative and Vice President of Operations at ILKB LLC and a citizen and resident of the State of New York residing in this district.

10. On information and belief, Defendant, ILKB TOO, LLC ("**ILKB TOO**") is a Florida limited liability company with a principal place of business in Florida and an office located at 210 Lake Harris Drive, Lakeland, Florida. Upon information and belief, Defendant, ILKB TOO is a successor by merger to Defendant, ILKB LLC. On information and belief, following the merger alleged herein, ILKB TOO's members include Michael Parrella, Daniel Castellini, and/or Shaun York. On information and belief, the merger alleged herein occurred in New York and is governed by New York law. ILKB TOO is authorized to, has and continues to transact business within the State of New York by acquiring or merging with ILKB, LLC in New York and by continuing ILKB, LLC's business in New York. Upon information and belief, ILKB TOO continues to conduct business in New York and derives revenue in New York through the ILKB, LLC business.

11. On information and belief, Defendant, Daniel Castellini ("**Castellini**") is a citizen of California residing at 3431 Via Montebello #192-213, Carlsbad, California. Upon information and belief, Defendant, Castellini, directly or indirectly through ILKB TOO, is a successor by merger to Defendant, ILKB LLC and he is authorized to, has and continues to transact business within the State of New York by acquiring or merging with ILKB, LLC in New York and by continuing ILKB, LLC's business in New York. Upon information and belief, Castellini continues to conduct business in New York and derives revenue in New York through

the ILKB, LLC business. On information and belief, the merger alleged herein occurred in New York and is governed by New York law.

12. On information and belief, Defendant, Shaun York ("**York**") is a citizen of Florida residing at 210 Lake Harris Drive, Lakeland, Florida. Upon information and belief, Defendant, York, directly or indirectly through ILKB TOO, is a successor by merger to Defendant, ILKB LLC and he is authorized to, has and continues to transact business within the State of New York by acquiring or merging with ILKB, LLC in New York and by continuing ILKB, LLC's business in New York. Upon information and belief, York continues to conduct business in New York and derives revenue in New York through the ILKB, LLC business. On information and belief, the merger alleged herein occurred in New York and is governed by New York law.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action under 28 U.S.C. § 1332, as Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants, ILKB, Parrella, Healy and Ferrari are residents and citizens of this district with their principal place of business within this district; Defendants, ILKB TOO, Castellini, and York are successors by merger to Defendant, ILKB; and Defendants have sufficient contacts to subject them to personal jurisdiction in this Court.

## FACTS COMMON TO ALL COUNTS

15. The Callens became interested in purchasing a franchise and were introduced to the ILKB Defendants in November of 2015.

5

16. Ferrari, on behalf of the ILKB Defendants, first spoke with the Callens on November 18, 2015 and provided an overview of the ILKB system, including the economics of running an ILKB franchise. On behalf of the ILKB Defendants, Ferrari made several representations, which the Callens later discovered to be false, intending to induce the Callens to purchase an ILKB franchise. Such false representations include, among other things, that 90% of marketing was and would be accomplished by ILKB corporate, that 55-68% of potential ILKB studio customers introduced through ILKB's marketing sign up for long term membership contracts, and that the average ILKB studio member stayed with the program for 14 months. On behalf of the ILKB Defendants, Ferrari also represented that no ILKB franchise locations struggled or went out of business. Ferrari represented that all or the average ILKB franchises broke even with less than 200 members and receive six figure income with less than 300 members.

17. Ferrari, on behalf of the ILKB Defendants, sent the Callens ILKB's Franchise Disclosure Document (or "**FDD**") dated March 26, 2015 to further induce the Callens to purchase an ILKB franchise. On information and belief, the FDD had not been registered with the State of New York, as required. The FDD is a prospectus required by law to be provided to prospective franchisees prior to the purchase to provide prospective franchisees with certain information to assist in making an informed decision whether to purchase the franchise.

18. The FDD contained, what the Plaintiffs later discovered, to be the following false statements and material omissions:

> a. The FDD omitted the fact that ILKB franchise owner and founder, Parrella, had filed for bankruptcy and had been discharged in 2008, as required to be disclosed under New York and federal law.

b. The FDD omitted lawsuits in which Parrella or FC Online Marketing, LLC, the predecessor affiliate of ILKB, had been the charged with fraud, violation of franchise laws or theft of services.

c. The FDD falsely stated that ILKB did not receive rebates from suppliers to franchisees, when, in fact, it did.

d. The FDD omitted the fact that ten ILKB franchised units had closed in 2015 and five had closed in 2014.

19. ILKB Defendants also misrepresented and failed to disclose the fact that ILKB would retain profits at the expense of franchisees through Defendants' lead generation program.

20. Induced by the ILKB Defendants' above representations, the Callens attended ILKB's "Discovery Day" event with other prospective franchisees in New York to learn about the franchise, in February 2016. During that time, Healy, who identified himself as ILKB's Vice President of Franchise Operations and as a representative of ILKB and its founder Parrella, made several representations on behalf of ILKB Defendants, which the Callens later discovered to be false, intending to induce the Callens to purchase an ILKB franchise. Such false representations include, among other things, affirming above representations made by Ferrari, including that 90% of marketing would be provided by ILKB corporate; representing that the initial investment for an ILKB franchise studio was $228,000 to $273,000, all or the average ILKB franchise breaks even at 200 members, reaches profitability in four to six months, and experiences approximately 80% profit for each member beyond 200; representing that ILKB corporate would negotiate with landlords for franchisees and the Callens would not need to sign a personal guarantee for a commercial lease for space for their ILKB studio; representing that no ILKB franchises had closed units and that the business worked with an absentee owner model. Ferrari confirmed these statements in a separate conversation.

21. In connection with Discovery Day, each of Ferrari, Healy and Parrella ultimately made the following representations on behalf of ILKB Defendants, which the Callens later discovered to be false, intending to induce the Callens to purchase an ILKB franchise, including, without limitation that:

    a. The total cost of buildout of their studio would be between $110,000 and $130,000, and the total cost to open a studio would be between $228,000 and $273,000.

    b. They would break-even at 200 members in 4-6 months or sooner.

    c. The franchise was perfect for absentee owners.

    d. The average ILKB franchise generated in excess of $130,000 in profits for the owners per year.

    e. ILKB's marketing would generate at least 100 trial members per month.

    f. No studio had ever closed and no one was struggling.

    g. The franchisor had a system of marketing for getting trial memberships into the studios and would result in at least 100 trials a month on the basis of a $2,500 monthly marketing budget.

    h. 55-68% of customers sign long term membership agreements and the average member stays 14 months.

22. Based on the above representations of the ILKB Defendants, the Plaintiffs decided to purchase an ILKB franchise with three territories in Colorado Springs, Colorado and signed a Franchise Agreement with a multi-outlet agreement on February 29, 2016. A copy of the Franchise Agreement is attached hereto as **Exhibit A**. Thereafter, Plaintiffs had to invest in excess of a total $364,280.81 in building out, equipping and setting up their ILKB studio and could not open until June 2017.

23. Over the years after signing the franchise agreement, the Plaintiffs discovered the falsity and material omissions of the ILKB Defendants' above representations, which include, among other things, the following:

    a. The FDD fraudulently concealed and did not disclose the fact that ILKB's owner and founder, Parrella, had been discharged in bankruptcy in January 2008, and lawsuits in which Parrella or the predecessor of ILKB had been the charged with fraud, violation of franchise laws or theft of services, both of which facts should have been disclosed in the FDD and, if they had been disclosed, would have caused the Plaintiffs not to purchase an ILKB franchise.

    b. ILKB Defendants did not negotiate a commercial lease for the Plaintiffs' ILKB studio nor did ILKB Defendants take action to ensure that Plaintiffs would not have to a personal guarantee to secure the space. On information and belief, that was not ILKB's practice. In fact, Plaintiffs were required to and did sign a personal guarantee to lease space required for their ILKB studio.

    c. ILKB Defendants' representations of buildout and investment costs were drastically and knowingly understated.

    d. ILKB franchise studio was not suited to be profitable with absentee ownership but required 50 to 60 unpaid hours a week by owners.

    e. Nowhere near 55-68% of potential ILKB studio customers introduced through ILKB's marketing sign up for long term membership contracts, and the average ILKB studio member did not stay with the program for 14 months. ILKB Defendants concealed that attrition and delinquencies made it impossible or improbable to attain or maintain the levels of membership represented and concealed ILKB's policy of not enforcing, or permitting enforcement of,

member contracts and payment obligations through collections.

f. On information and belief, ILKB had closed over a dozen studios in the two years preceding signing of the Plaintiffs' franchise agreement.

g. On information and belief, ILKB Defendants' representations of revenues and profitability were knowingly false, unsupported and implausible.

h. On information and belief, it was never possible or probable for Plaintiffs to break-even at 200 members in four to six months.

i. ILKB's marketing failed to generate at least 100 trial members per month every month as promised or sufficient trials to sustain the business.

j. ILKB Defendants misrepresented and failed to disclose the fact that ILKB would profit at franchisees' expense by retaining fees from ILKB's lead generation program, which violated Plaintiffs' franchise agreement with ILKB. *See*, §4.4 of the Franchise Agreement. ILKB required Plaintiffs and other franchisees to participate in its lead generation program which ILKB represented to have set up with third party promotional companies and represented that ILKB would only retain one-time upfront fees from such third party promotional companies. However, on information and belief, in practice, ILKB retained 100% of third party fees and 100% of web trial purchases made through its lead generation program. The web trial process and web site is not a third party promotional company. It is owned and/or controlled by ILKB Defendants.

24. As a result of ILKB Defendants' failure to provide the above conditions that were falsely represented and promised, Plaintiffs' ILKB studio struggled to remain viable, generating

approximately $60,000 or less in a fiscal year with significant uncompensated time investments required by the Callens.

26. As a result of ILKB Defendants' failure to provide the above conditions that were falsely represented and promised, Plaintiffs' ILKB studio failed to generate the promised annual income and failed run with minimal owner involvement, and thus Plaintiff, Courtney Callen was unable to leave her full-time employment and Plaintiff, Thomas Callen, a Certified Pilot in the United States Air Force, was unable to return to service and lost significant wages.

26. Due to ILKB Defendants' breach, fraud and misleading statements, Plaintiffs have damages and liabilities in excess of $900,000.

27. Plaintiffs' claims were initially commenced against ILKB Defendants on or about February 26, 2019 in an arbitration proceeding currently pending before JAMS Resolution Center, under JAMS Case No. 1425029141, pursuant to an arbitration provision in the franchise agreement at issue which was executed between Plaintiffs and ILKB, LLC. Exhibit A, §14.2.

28. Any and all statutes of limitations on Plaintiffs' claims are tolled during the pendency of the arbitration.

29. ILKB Defendants have since expressly and willfully failed and refused, and continue to fail and refuse, to comply with their obligations in order for Plaintiffs' arbitration to proceed by, among other things, refusing to pay or deposit ILKB Defendants' portion of the required arbitration fees, in violation of the Franchise Agreement. During the month of June 2020, ILKB Defendants represented through their counsel that they would not pay or deposit such fees even if refusing to do so resulted in the Plaintiffs filing suit in court. Therefore, Plaintiffs have no choice but to proceed before this Court.

30. Absent judicial intervention, Plaintiffs do not believe ILKB Defendants will cease their fraudulent conduct or repay the funds improperly or unlawfully taken and withheld.

31. Plaintiffs recently became aware that, upon information and belief, ILKB TOO Defendants became successors to ILKB by merger or de facto merger. Defendants, Castellini and York used ILKB's email account to issue the June 28, 2020 letter attached hereto as **Exhibit B** to ILKB franchisees representing that as of June 26, 2020 they had "acquire[d] all assets and take[n] full control of the Company [ILKB]" to continue the company's business with the existing franchisees using the ILKB or "iLoveKickboxing" name with Daniel Castellini filling the role as CEO and Shaun York accepting the role of COO. On information and belief, each of Castellini and York, directly or through ILKB TOO, is a successor by merger to Defendant, ILKB and is liable for ILKB's obligations to the Plaintiffs.

32. On information and belief, a merger or de facto merger took place whereby ILKB TOO Defendants effectively took over ILKB and such merger or de facto merger involves (i) continuity of ownership in that existing ILKB member or equity owner, Parrella, directly or indirectly, retained an interest in ILKB, its business and/or its assets following the merger; (ii) cessation or dissolution of the acquired ILKB entity soon following the merger; (iii) assumption by successor ILKB TOO Defendants of liabilities ordinarily necessary for the uninterrupted continuation of the acquired ILKB business; and (iv) continuity of certain management, personnel, assets and general business operations.

33. The merger or de facto merger took place when Defendants had knowledge that arbitrations and other legal actions by Plaintiffs and other similarly situated franchisees were pending against ILKB.

34. On information and belief, (i) ILKB TOO Defendants expressly or impliedly assumed the ILKB predecessor's tort liability, including liabilities to the Plaintiffs, in connection with the merger or de facto merger; (ii) the merger or de facto merger resulted in a consolidation of ILKB TOO Defendants with ILKB; (iii) following the merger or de facto merger, the

surviving business is a mere continuation of the ILKB predecessor; or (iv) the merger or de facto merger was entered into fraudulently or wrongfully to avoid ILKB's liabilities to the Plaintiffs and other similarly situated franchisees.

**COUNT I**
**(Violation of the New York State Franchise Sales Act Against ILKB Defendants)**

35. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

36. The Plaintiffs franchisee is a "Franchisee" and the franchisor is a "Franchisor" as defined under the New York State Franchise Sales Act, N.Y. Gen. Bus. L. § 680 et seq. The New York Act applies to the sale of the franchise to the franchisee.

37. The IKLB Defendants offered for sale and sold in and from New York the franchise iLoveKickboxing, which the Plaintiffs subsequently purchased.

38. In connection with the purchase, the Plaintiffs traveled to New York for a presentation on the franchise.

39. Under the New York Act, it is unlawful for any person, in connection with the offer, sale or purchase of a franchise to directly or indirectly employ any devise, scheme or artifice to defraud; to make untrue statements of a material fact or to admit material facts; or to engage in any practice or course of conduct that operates or would operate as a fraud or deceit upon any person. N.Y. Gen. Bus. L. § 687.

40. Each of the ILKB Defendants violated the New York Act by, among other things:

   a. Providing a FDD that failed to disclose ILKB Defendants' bankruptcy and lawsuits for fraud, violation of franchise laws or theft of services;

   b. Making false financial performance representations outside of the FDD; and

c. Making false statements and omissions of material facts and otherwise engaging in conduct that operates as a fraud, all as set forth above.

41. Under Gen. Bus. L. § 691.1 the Plaintiffs are entitled to recover damages and/or rescission as well as attorneys' fees and costs.

42. The Plaintiffs are entitled to damages incurred as a result of ILKB Defendants' misrepresentations and violations of the act.

## COUNT II
### (Breach of Contract Against ILKB)

43. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

44. Plaintiff and ILKB entered into a Franchise Agreement pursuant to which, among other things, ILKB undertook certain marketing obligations including those set forth in Section 4.4 of the Franchise Agreement, as set forth above.

45. ILKB further breached its obligations by refusing to comply with and participate in the pending arbitration, as required under Section 14.2 of the Franchise Agreement.

46. ILKB breached its obligations as a result of which Plaintiff has been injured in an amount to be determined at trial but in excess of $900,000.

## COUNT III
### (Common Law Fraud Against ILKB Defendants)

47. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

48. ILKB Defendants made the false representations and fraudulent omissions in the Franchise Disclosure Document, the Discovery Day Materials, and in communications with the Plaintiffs as detailed above regarding, among other things, the performance of previous franchises and the costs of the operations.

49. The ILKB Defendants knew these representations were false and made them with the intent that Plaintiffs would rely upon them to Plaintiffs' detriment.

50. The Plaintiffs justifiably relied upon ILKB Defendants' misrepresentations and incurred damages as a result.

51. The Plaintiffs are entitled to recover the losses that it has suffered as a result of ILKB Defendants' fraud.

**COUNT IV**
**(Negligent Misrepresentation Against ILKB Defendants)**

52. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

53. ILKB Defendants negligently made false representations in the course of the sale of the franchise and that they knew to be contrary to the truth and knowing that the Plaintiffs would rely upon them.

54. As a result of Plaintiffs' reliance upon ILKB Defendants' negligent misrepresentations, the Plaintiffs have incurred damages to which they are entitled to recover.

**COUNT V**
**(Violation of the Colorado Consumer Protection Act Against ILKB Defendants)**

55. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

56. The Colorado Consumer Protection Act applies to the sale of the franchise to the franchisee.

57. Under the Colorado Act, it is unlawful for any person to "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith."

58. ILKB Defendants violated the Colorado Act by, among other things:

   a. Engaging in deceptive trade practices in order to induce the Plaintiffs, and general public, to act on the basis of false or misleading information;

   b. The deceptive trade practices were utilized in the course of ILKB Defendants' business;

   c. The false representations were made to the public during a Discovery Day presentation to induce prospective franchisees, like the Plaintiffs;

   d. The deceptive trade practices utilized by ILKB Defendants directly affect the public at large and ILKB Defendants have and will continue to utilize these practices to sell franchises to the public; and

   e. ILKB Defendants use of the deceptive trade practices resulted in substantial damages to the Plaintiffs in an amount not less than $900,000.

59. ILKB Defendants' fraudulent sale of a franchise to the Plaintiffs was part of a program, pattern and practice to sell franchises to the public through false representations; ILKB Defendants in fact have sold dozens of franchises to the public pursuant to false representations, willful omissions of material facts and unlawful Franchise Disclosure Documents, with the result that substantial numbers of innocent people have lost their life savings and incurred substantial debt.

60. Unless ILKB Defendants' fraudulent and unlawful practices are ceased, the public will be injured by their continuing wrongs.

61. Under Colorado Revised Statutes ("C.R.S.") § 6-1-101, et seq. the franchisee is entitled to recover damages as well as attorneys' fees and costs.

62. Plaintiffs here are entitled to damages incurred as a result of ILKB Defendants' misrepresentations and violations of the Colorado Act.

63. As a direct and proximate result of the foregoing, Plaintiffs have been damaged in an amount in excess of $900,000 plus additional damages in an amount to be proven at trial, plus interest, costs and attorneys' fees.

**COUNT VI**
**(Alter Ego, Veil Piercing and Agency Liability Against ILKB, Parrella, Ferrari and Healy)**

64. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

65. At all relevant times, Principal Perpetrators owned and/or controlled ILKB.

66. At all relevant times, Principal Perpetrators dominated and controlled ILKB using it to perpetrate the above fraud and wrongdoing upon Plaintiffs.

67. At all relevant times, Principal Perpetrators dominated and controlled the assets, operations, and activities of ILKB using it to perpetrate the above fraud and wrongdoing upon Plaintiffs.

68. Principal Perpetrators failed to observe important corporate formalities and used the assets and operations of ILKB for their own purpose and benefit to perpetrate the above fraud and wrongdoing upon Plaintiffs.

69. Principal Perpetrators, acting in concert and in their capacities as officers and agents of ILKB, used ILKB's email accounts, offices and other ILKB resources to conduct business on their own behalf and/or for their own benefit.

70. Principal Perpetrators dominated and controlled ILKB to such an extent that any adherence to the fiction of ILKB's separate existence would permit the abuse of a limited liability company and cause and promote injustice by allowing Principal Perpetrators to evade liability or veil assets that should in equity be used to satisfy the judgment sought by the Plaintiffs in this litigation.

17

71. At all relevant times, Principal Perpetrators were and are alter egos of ILKB because there was and is such unity of interest, ownership and control that each Principal Perpetrators must be treated as one with ILKB to prevent the inequitable result of permitting them to profit from the above fraud and wrongdoing perpetrated upon Plaintiffs.

72. Additionally or alternatively, any corporate veil between ILKB, on the one hand, and any of the Principal Perpetrators, on the other hand, must be pierced to hold the Principal Perpetrators vicariously liable for obligations of ILKB owed to Plaintiffs based on veil piercing or agency theories. Doing so is necessary and proper to prevent the wrongs and injustices perpetrated by the ILKB Defendants because the Principal Perpetrators exercised domination and control over ILKB using it as an instrumentality to perpetrate the above fraud and wrongdoing upon Plaintiffs.

73. As a result of the foregoing, Plaintiffs are entitled to a declaration that the Principal Perpetrators are each are liable for ILKB's obligations to the Plaintiffs based on alter ego, veil piercing or agency liability.

## COUNT VII
### (Successor Liability Against ILKB TOO, Castellini and York)

74. Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

75. A merger or de facto merger took place whereby ILKB TOO Defendants effectively took over ILKB and such merger or de facto merger involves (i) continuity of ownership in that existing ILKB member or equity owner, Parrella, directly or indirectly, retained an interest in ILKB, its business and/or its assets following the merger; (ii) cessation or dissolution of the acquired ILKB entity soon following the merger; (iii) assumption by successor ILKB TOO Defendants of liabilities ordinarily necessary for the uninterrupted continuation of

the acquired ILKB business; and (iv) continuity of certain management, personnel, assets and general business operations.

76. On information and belief, (i) ILKB TOO Defendants expressly or impliedly assumed the ILKB predecessor's tort liability, including liabilities to the Plaintiffs, in connection with the merger or de facto merger; (ii) the merger or de facto merger resulted in a consolidation of ILKB TOO Defendants with ILKB; (iii) following the merger or de facto merger, the surviving business is a mere continuation of the ILKB predecessor; or (iv) the merger or de facto merger was entered into fraudulently or wrongfully to avoid ILKB's liabilities to the Plaintiffs and other similarly situated franchisees.

77. ILKB TOO Defendants effectively took over ILKB and its business and should be deemed to carry the predecessor's liabilities as a concomitant to the benefits ILKB TOO Defendants derive from the goodwill purchased.

78. Each of ILKB TOO Defendants, directly or through ILKB TOO, is a successor by merger to Defendant, ILKB and is liable for ILKB's obligations to the Plaintiffs.

79. As a result of the foregoing, Plaintiffs are entitled to a declaration that ILKB TOO Defendants are each liable for ILKB's obligations to the Plaintiffs based on successor liability.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment against Defendants as follows:

A. For entry of Judgment in Plaintiffs' favor on all Counts;

B. For an Award against Defendants for all damages to which Plaintiffs may be entitled, including incidental damages, compensatory damages, and consequential damages;

C. For an Award of punitive damages;

D. For costs and attorneys' fees to the extent provided by law;

E. For prejudgment and post-judgment interest according to law; and,

F.   For such other and further relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand trial by jury of all issues so triable.

Dated: October 23, 2020
       New York, New York

        **ICE MILLER LLP**
        Attorneys for Plaintiffs,

By: /s/ Heather L. Maly
    Heather L. Maly
    200 West Madison, Suite 3500
    Chicago, Illinois 60606
    (312) 726-2507
    Heather.Maly@icemiller.com

By: /s/ John D. Giampolo
    John D. Giampolo (admission pending)
    1500 Broadway, 29th Fl.
    New York, New York 10036
    (212) 824-4973
    (212) 824-4974
    John.Giampolo@icemiller.com