**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ X

THOMAS CALLEN, COURTNEY CALLEN and
GOLDEN POLAR BEAR, LLC,

                  Plaintiffs,

      v.

ILKB, LLC, MICHAEL PARRELLA, RYAN
HEALY and SCOTT FERRARI, each individually,
and ILKB TOO, LLC, DANIEL CASTELLINI and
SHAUN YORK, each as successor by merger to ILKB
LLC

                  Defendants.

**Case No.: 20-cv-03345-DRH-ST**

**ORAL ARGUMENT REQUESTED**

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOVING DEFENDANTS' MOTION TO DISMISS

**ROSENBERG & ESTIS, P.C.**

*/s/ Justin Scott Weitzman*
Justin Scott Weitzman
733 Third Avenue
New York, New York 10017
Tel: 212-551-1261
Email: jweitzman@rosenbergestis.com

***Attorneys for Plaintiffs***
***Golden Polar Bear, LLC, Thomas Callen and***
***Courtney Callen***

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................1

THE FACTUAL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT ....................3

ARGUMENT ..............................................................................................8

I.    MOVING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE
A CAUSE OF ACTION MUST BE DENIED ...................................................8

    A.    Legal Standard .............................................................................8

    B.    Plaintiffs have Stated Causes of Action Against Moving Defendants Upon
Which Relief May be Granted .........................................................8

        i)    Plaintiffs have stated a cause of action under the NYSFA ........................8

        ii)    Plaintiffs have stated a cause of action for breach of contract..................11

        iii)    Plaintiffs have stated claims for fraud and negligent
misrepresentation .....................................................................12

        iv)    Plaintiffs have stated a claim under CCPA............................................14

    C.    Plaintiffs' Statutory Claims are not Time-Barred..................................15

II.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED PERSONAL
JURISDICTION ..............................................................................17

    A.    Legal Standard ...........................................................................17

    B.    ILKB Too, Castellini and York are Subject to Personal Jurisdiction under
the Theory of Successor Liability ...................................................18

        i)    ILKB TOO, Castellini and York expressly or impliedly assumed
ILKB's liabilities .....................................................................19

        ii)    Plaintiffs have pleaded merger or de facto merger, or mere
continuation.............................................................................21

        iii)    ILKB entered into the transaction to fraudulently escape liabilities..........26

III.    POLAR BEAR HAS STANDING ...........................................................26

CONCLUSION............................................................................................26

## TABLE OF CONTENTS

**Page(s)**

**Cases**

A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.,
   70 F. Supp. 3d 376 (D.D.C. 2014) ............................................. 9

Allen Morris Commercial Real Estate Servs. Co. v. Numismatic Collectors Guild, Inc.,
   No. 90 Civ. 264(SWK), 1993 WL 183771 (S.D.N.Y. May 27, 1993) ..................................... 22

Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.,
   944 F. Supp. 240 (S.D.N.Y. 1996) ............................................. 25

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ............................................. 8

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
   171 F.3d 779 (2d Cir. 1999) ............................................. 17

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) ............................................. 8

Burgos v. Pulse Combustion, Inc.,
   227 A.D.2d 295 (1st Dep't 1996) ............................................. 24

Cargo Partner AG v. Albatrans Inc.,
   207 F. Supp. 2d 86 (S.D.N.Y. 2002),
   aff'd, 352 F.3d 41 (2d Cir. 2003) ............................................. 23

Cargo Partner AG v. Albatrans, Inc.,
   352 F.3d 41 (2d Cir. 2003) ............................................. 21, 22

Century Pac. Inc. v. Hilton Hotels Corp.,
   No. 03 Civ. 8258, 2004 WL 868211 (S.D.N.Y. Apr. 21, 2004) ............................................. 9, 10

Chidester v. E. Gas & Fuel Assoc.,
   859 P. 2d 222 (Colo. App. 1992) ............................................. 16

Colon v. Multi-Pak Corp.,
   477 F. Supp. 2d 620 (S.D.N.Y. 2007) ............................................. 21

DiStefano v. Carozzi N. Am., Inc.,
   286 F.3d 81 (2d Cir. 2001) ............................................. 17

Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,
   722 F.3d 81 (2d Cir. 2013) ............................................. 18

Fitzgerald v. Fahnestock & Co.,
   286 A.D.2d 573 (1st Dep't 2001) ............................................. 21, 22, 23

- ii -

Francis v. Mead Johnson & Co.,
    No. 1:10-CV-00701-JLK, 2010 WL 5313540 (D. Colo. Dec. 17, 2010) ................................ 15

Golden Polar Bear, LLC v. Franchoice, Inc.,
    No. 19-CV-484 (MJD/ECW), 2019 WL 7598650 (D. Minn. Dec. 19, 2019),
    report and recommendation adopted, No. 19-CV-484 MJD/ECW, 2020 WL 264145
    (D. Minn. Jan. 17, 2020) ...................................................................................................... 9, 10

Graham v. City of Albany,
    No. CIV. 1:08CV892RFT, 2009 WL 4263510 (N.D.N.Y. Nov. 23, 2009) ............................ 16

Hall v. Walter,
    969 P.2d 224 (Colo. 1998) ................................................................................................ 14, 15

In re InSITE Servs. Corp., LLC,
    287 B.R. 79 (Bankr. S.D.N.Y. 2002) ...................................................................................... 11

In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,
    399 F. Supp. 2d 325 (S.D.N.Y. 2005) ............................................................................... 17, 18

In re New York City Asbestos Litig.,
    15 A.D.3d 254 (1st Dep't 2005) .............................................................................................. 23

Individual Securities, Ltd. v. Ross,
    152 F.3d 918 (2nd Cir. 1998) .................................................................................................. 16

Int'l Private Satellite Partners, L.P. v. Lucky Cat,
    975 F.Supp. 483 (S.D.N.Y.1997) ............................................................................................ 19

Ivar v. Elk River Partners, LLC,
    705 F. Supp. 2d 1220 (D. Colo. 2010) .................................................................................... 15

JM Vidal, Inc. v. Texdis USA, Inc.,
    764 F. Supp. 2d 599 (S.D.N.Y. 2011) ....................................................................................... 9

Jonas v. Estate of Leven,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015) ..................................................................................... 17

Joseph Francese, Inc. v. Enlarged City Sch. Dist. of Troy,
    95 N.Y.2d 59 (2000) ................................................................................................................ 16

Kidz Cloz, Inc. v. Officially for Kids, Inc.,
    No. 00–CV–6270, 2002 WL 1586877 (S.D.N.Y. July 17, 2002) ............................................ 20

Leon v. Shmukler,
    992 F. Supp. 2d 179 (E.D.N.Y. 2014) ..................................................................................... 19

LiButti v. United States,
    178 F.3d 114 (2d Cir. 1999) .................................................................................................... 19

Lumbard v. Maglia, Inc.,
   621 F.Supp. 1529 (S.D.N.Y.1985) ........................................................... 22

Marine Midland Bank, N.A. v. Miller,
   664 F.2d 899 (2d Cir. 1981) ................................................................... 18

Mon-Shore Mgmt., Inc. v. Family Media, Inc.,
   584 F. Supp. 186 (S.D.N.Y. 1984) ........................................................ 10

Nationwide Mut. Fire Ins. Co. v. Long Island Air Conditioning, Inc.,
   78 A.D.3d 801 (2d Dep't 2010) ............................................................. 19

Randolph Equities, LLC v. Carbon Capital, Inc.,
   No. 05 CIV 10889 PAC, 2007 WL 914234 (S.D.N.Y. Mar. 26, 2007) ................... 11

Reed v. Oakley,
   172 Misc. 2d 655 (Sup. Ct. 1996),
   aff'd, 240 A.D.2d 991(1997) ................................................................... 9

Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.,
   893 F. Supp. 285 (S.D.N.Y. 1995) ........................................................ 12

Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,
   62 P.3d 142 (Colo. 2003) ....................................................................... 14

Schumacher v. Richards Shear Co.,
   59 N.Y.2d 239 (1983) ...................................................................... 18, 21

Schwartz v. Pillsbury Inc.,
   969 F.2d 840 (9th Cir. 1992) ................................................................. 10

Silverman Partners LP v. Verox Grp.,
   No. 08 CIV 3103 (HB), 2010 WL 2899438 (S.D.N.Y. July 19, 2010) ........... 21, 22, 24

Simms v. Biondo,
   816 F. Supp. 814 (E.D.N.Y. 1993) ........................................................ 12

Societe Anonyme Dauphitex v. Schoenfelder Corp.,
   No. 07 CIV. 489, 2007 WL 3253592 (S.D.N.Y. Nov. 2, 2007) ...................... 21

State Farm Fire & Cas. Co. v. Main Bros. Oil Co.,
   101 A.D.3d 1575 (3d Dep't 2012) ......................................................... 21

Sweatland v. Park Corp.,
   181 A.D.2d 243 (4th Dep't 1992) ...................................................... 20, 22

Time Warner Cable, Inc. v. Networks Grp., LLC,
   No. 09 CIV 10059 DLC, 2010 WL 3563111 (S.D.N.Y. Sept. 9, 2010) ................... 19

Wensing v. Paris Industries–New York,
   158 A.D.2d 164 (3d Dep't 1990) ........................................................... 24

RE\33114\0001\3336423v1

Whitaker v. Am. Telecasting, Inc.,
    261 F.3d 196 (2d Cir. 2001) ........................................................................ 17

Zanani v. Savad,
    217 A.D.2d 696 (2d Dep't 1995) ................................................................ 13

**Statutes**

C.R.S. 6-1-115 ........................................................................................................ 15

N.Y. Gen. Bus. Law § 691(4) ................................................................................ 15

**Rules**

Rule 6(c) JAMS Comprehensive Arbitration Rules & Procedures ............................ 16

Plaintiffs Thomas Callen ("T. Callen"), Courtney Callen ("C. Callen") (T. Callen and C. Callen are collectively hereinafter referred to as, the "Callens") and Golden Polar Bear LLC ("Golden" and together with the Callens, each and collectively referred to as "Plaintiff" or "Plaintiffs") submit this memorandum of law in opposition to the motion ("Motion") by defendants ILKB, LLC ("ILKB"), Michael Parrella ("Parrella")[1], ILKB Too, LLC ("ILKB Too"), Daniel Castellini ("Castellini") and Shaun York ("York") (ILKB, Parrella, ILKB Too, Castellini and York are collectively hereinafter referred to as "Moving Defendants") to dismiss the Second Amended Complaint as against Moving Defendants. Plaintiffs also submit the accompanying declaration of Courtney Callen ("Callen Dec.")[2] and the declaration of Justin Weitzman ("Weitzman Dec.").[3]

## PRELIMINARY STATEMENT

This lawsuit is brought by a franchisee against a franchisor, its successors in interest, and various individuals associated with both. The underlying claims are for breach of contract and fraud, as well as statutory claims, resulting from the franchisor's improper conduct. Arbitration was commenced back in 2019 pursuant to the franchise agreement between franchisee and franchisor. However, the franchisor caused delays before unjustifiably refusing to participate in and cooperate with the arbitration process thereby forcing Plaintiffs to take action in this Court. Before Plaintiffs commenced action in this Court, it was discovered that franchisor had sold to successors in interests. The successors in interests essentially assumed the assets and liabilities of the franchisor, and maintained continuity of the operation of the franchise. When the arbitration

---

[1]  Parrella has not been granted leave of the Court to file the Motion. To the extent that the Court permits Parrella to join this Motion by virtue of the October 28, 2020 letter, the mutual representation highlighting no apparent conflict of interest between Parrella and the other Moving Defendants should not go unnoticed. Rather, as more fully explained below, this mutual representation is certainly telling, and belies Moving Defendants' position with respect to continuity of ownership for successor and/or merger liability.

[2]  All references herein to **Exhibit 1** and **Exhibit 2** refer to **Exhibit 1** and **Exhibit 2** annexed to the Callen Dec.

[3]  All references herein to **Exhibits A** through **E** refer to Exhibits annexed to the Weitzman Dec.

attempt proved fruitless, and there being implication that the franchisor sold the business in order to wrongfully avoid legal liabilities (to many franchisees), this lawsuit was initiated.

Now, Moving Defendants (which include franchisor, its successors in interest, and various individuals associated with both) submit this Motion, which is nothing more than a premature and baseless attempt to dispose of rightful claims without affording Plaintiffs (the franchisee) the opportunity to conduct discovery.  Not only do the Moving Defendants hope to avoid disclosure of the skeletons in their closet, but they also seek to further delay or avoid adjudication of Plaintiffs' claims.  It is time to litigate the claims and not permit Moving Defendants' delay strategy with rewarding a "kitchen sink" dismissal motion.  The apparent goal:  Delay and drive up costs of litigation hoping that Plaintiffs will abandon their claims.

What Moving Defendants ask for in seeking dismissal does not past the straight-face test.  They ask the Court to first permit illegal conduct to occur.  Then upon a required arbitration filing to remedy the illegal conduct, refuse to participate.  While the arbitration is pending, perform a merger or de factor merger in order to transfer assets and shield liability.  And, after all of the aforementioned conduct, now ask this Court that everyone be relieved of liability to Plaintiffs for the illegal conduct, including on statute of limitations grounds which would not have passed but for the refusal to arbitrate.  The Court should not condone this practice.

As more fully explained below, Plaintiff has alleged sufficient claims for breach of contract, fraud and negligent misrepresentation, as well as statutory claims under the New York Franchise Sales Act ("NYSFA") and Colorado Consumer Protection Act ("CCPA").  Furthermore, there are ample facts, allegations and evidence in the pre-discovery record which establish successor liability against ILKB Too, Castellini and York, or at the very least warrant discovery on the issues.  As such, the Court should deny the Motion in its entirety.

## THE FACTUAL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

**Plaintiffs' Purchase of an ILKB Franchise**

The Second Amended Complaint asserts that Plaintiffs became interested in purchasing a franchise, and were introduced to ILKB through defendant Scott Ferrari.  See Second Amended Complaint, **Exhibit 1** at ¶ 15.  Plaintiffs were provided with ILKB's Franchise Disclosure Document ("FDD") dated March 26, 2015 containing, what Plaintiffs only discovered much later, a litany of false statements and material omissions relating a previously filed bankruptcy, lawsuits for fraud, rebates obtained from suppliers to franchisees, and omission of the closure of many franchises.  Id. at. ¶ 17-18.

Based on these misrepresentations, Plaintiffs attended ILKB's "Discovery Day" event with other prospective franchisees in New York to learn more about ILKB.  See Second Amended Complaint, **Exhibit 1** at ¶ 20.  This was the first time Plaintiffs met Parrella, who identified himself as ILKB's founder.  Id.  Parrella furthered ILKB's misrepresentations to Plaintiffs in order to induce them into purchasing an ILKB franchise.  Id.  These misrepresentations included, among others: a) 90% of marketing would be provided by ILKB corporate; b) the initial investment for an ILKB franchise studio was $228,000 to $273,000; c) all or the average ILKB franchise breaks even at 200 members, reaches profitability in four to six months, and experiences approximately 80% profit for each member beyond 200; d) ILKB corporate would negotiate with landlords for franchisees and the Callens would not need to sign a personal guarantee for a commercial lease for space for their ILKB studio; and e) no ILKB franchises had closed units and that the business worked with an absentee owner model."  Id.

Parrella and ILKB were further attributed with the following misrepresentations:  a) The total cost of buildout of Plaintiffs' studio would be between $110,000 and $130,000, and the total cost to open a studio would be between $228,000 and $273,000; b) Plaintiffs would break-even at

200 members in 4-6 months or sooner; c) The franchise was perfect for absentee owners; d) The average ILKB franchise generated in excess of $130,000 in profits for the owners per year; e) ILKB's marketing would generate at least 100 trial members per month; f) No studio had ever closed and no one was struggling; g) The franchisor had a system of marketing for getting trial memberships into the studios and would result in at least 100 trials a month on the basis of a $2,500 monthly marketing budget; and h) 55-68% of customers sign long term membership agreements and the average member stays 14 months.  See Second Amended Complaint, **Exhibit 1** at ¶ 21.

Induced and overwhelmed by the representations made by ILKB and Parrella, Plaintiffs purchased an ILKB franchise covering three territories in Colorado Springs, Colorado, and signed a Franchise Agreement with a multi-outlet agreement on February 29, 2016 (the "Franchise Agreement").  Id. at ¶ 22; see also Franchise Agreement, **Exhibit 1** at Exhibit A.

In the years following Plaintiffs' purchase, while operating the franchise, Plaintiffs discovered the falsity and material omissions in ILKB's and Parrella's representations.   See Second Amended Complaint, **Exhibit 1** at ¶ 23.  Specifically, Plaintiffs learned: a) The FDD fraudulently concealed and did not disclose the fact that ILKB's owner and founder, Parrella, had been discharged in bankruptcy in January 2008, and lawsuits in which Parrella or the predecessor of ILKB had been the charged with fraud, violation of franchise laws or theft of services, both of which facts should have been disclosed in the FDD and, if they had been disclosed, would have caused the Plaintiffs not to purchase an ILKB franchise; b) ILKB did not negotiate a commercial lease for the Plaintiffs' ILKB studio nor did ILKB take action to ensure that Plaintiffs would not have to a personal guarantee to secure the space; c) ILKB's representations of buildout and investment costs were drastically and knowingly understated; d) ILKB franchise model was not suited to be profitable with absentee ownership but required 50 to 60 unpaid hours a week by

- 4 -

owners; e) Nowhere near 55-68% of potential ILKB studio customers introduced through ILKB's marketing sign up for long term membership contracts, and the average ILKB studio member did not stay with the program for 14 months. ILKB concealed that attrition and delinquencies made it impossible or improbable to attain or maintain the levels of membership represented and concealed ILKB's policy of not enforcing, or permitting enforcement of, member contracts and payment obligations through collections; f) On information and belief, ILKB had closed over a dozen studios in the two years preceding signing of the Plaintiffs' franchise agreement; g) On information and belief, ILKB's representations of revenues and profitability were knowingly false, unsupported and implausible; h) On information and belief, it was never possible or probable for Plaintiffs to break-even at 200 members in four to six months; i) ILKB's marketing failed to generate at least 100 trial members per month every month as promised or sufficient trials to sustain the business; j) ILKB misrepresented and failed to disclose the fact that ILKB would profit at franchisees' expense by retaining fees from ILKB's lead generation program, which violated Plaintiffs' franchise agreement with ILKB. ILKB required Plaintiffs and other franchisees to participate in its lead generation program which ILKB represented to have set up with third party promotional companies and represented that ILKB would only retain one-time upfront fees from such third-party promotional companies. However, on information and belief, in practice, ILKB retained 100% of third-party fees and 100% of web trial purchases made through its lead generation program.  The web trial process and website are not third-party promotional companies. Rather, it is owned and/or controlled by ILKB Defendants.[4] Id.

As a result of these misrepresentations, and ILKB's failure to provide the promised support, Plaintiffs' franchise struggled to remain viable.  See Second Amended Complaint, **Exhibit 1** at

---

[4]   As set forth in the Second Amended Complaint, ILKB together with the principals and officers prior to the merger, Michael Parrella, Ryan Healy and Scott Ferrari, are collectively referred as "ILKB Defendants."

¶ 24.  As a result, Plaintiffs have sustained damages and liabilities in excess of $900,000.  Id. at ¶ 26.

**Underlying Arbitration**

Plaintiffs' commenced an arbitration against ILKB Defendants on or about February 26, 2019 which is currently pending before JAMS Resolution Center, under JAMS Case No. 1425029141, pursuant to an arbitration provision in the Franchise Agreement.  See Second Amended Complaint, **Exhibit 1** at ¶ 27; see also Franchise Agreement, **Exhibit 1** at Exhibit A, §14.2.  ILKB Defendants have since expressly and willfully failed and refused, and continue to fail and refuse, to comply with their obligations for the arbitration to proceed by, among other things, refusing to pay or deposit ILKB Defendants' portion of the required arbitration fees, in violation of the Franchise Agreement.  See Second Amended Complaint, **Exhibit 1** at ¶ 28.

**ILKB TOO, Castellini and York are Successors in Interest to ILKB**

On June 28, 2020, Castellini and York used ILKB's email URL (@ilovekickboxing.com) to issue a letter (the "Letter") to franchisees representing that as of June 26, 2020 they had "acquire[d] all assets and take[n] full control of the Company [ILKB]" to continue the company's business with the existing franchisees using the ILKB or "iLoveKickboxing" name with Daniel Castellini filling the role as CEO and Shaun York accepting the role of COO.  See Second Amended Complaint **Exhibit 1** at ¶ 31; see also Letter, **Exhibit 1** at Exhibit B.

The purchase transaction resulted in: (i) ILKB Too, Castellini and York expressly or impliedly assuming ILKB's tort liability, including liabilities to Plaintiffs; (ii) a merger or de factor merger between ILKB and ILKB Too, Castellini and York; iii) the mere continuation of ILKB by ILKB Too, Castellini and York; and (iv) ILKB fraudulently or wrongfully transferring assets to ILKB Too, Castellini and York to avoid ILKB's liabilities to Plaintiffs and other similarly situated franchisees.  See Second Amended Complaint, **Exhibit 1** at ¶ 34.

- 6 -

Additionally, the transaction caused ILKB Too, Castellini and York to effectively take over ILKB and such merger or de facto merger involves: (i) continuity of ownership in that existing ILKB member or equity owner, Parrella, directly or indirectly, retained an interest in ILKB, its business and/or its assets following the merger; (ii) cessation or dissolution of the acquired ILKB entity soon following the merger; (iii) assumption by successor ILKB Too, Castellini and York of liabilities ordinarily necessary for the uninterrupted continuation of the acquired ILKB business; and (iv) continuity of certain management, personnel, assets and general business operations." See Second Amended Complaint, **Exhibit 1** at ¶ 32.

The merger or de facto merger took place at a time when it was known that the arbitration and other legal actions by franchisee were pending against ILKB.  See Second Amended Complaint, **Exhibit 1** at ¶ 33.  As a result, "(i) ILKB TOO Defendants[5] expressly or impliedly assumed the ILKB predecessor's tort liability, including liabilities to the Plaintiffs, in connection with the merger or de facto merger; (ii) the merger or de facto merger resulted in a consolidation of ILKB TOO Defendants with ILKB; (iii) following the merger or de facto merger, the surviving business is a mere continuation of the ILKB predecessor; or (iv) the merger or de facto merger was entered into fraudulently or wrongfully to avoid ILKB's liabilities to the Plaintiffs and other similarly situated franchisees."  Id. at ¶ 34.  ILKB Too, Castellini and York essentially took over the ILKB business.  Id. at ¶ 77.

---

[5]  As set forth in the Second Amended Complaint, ILKB TOO, LLC, Daniel Castellini and Shaun York are collectively referred to as the "ILKB TOO Defendants."

## ARGUMENT

I. **MOVING DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CAUSE OF ACTION MUST BE DENIED**

A. **Legal Standard**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all allegations made by the Plaintiffs. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 550 U.S. at 563. A complaint survives a motion to dismiss where it alleges facts that "state a claim to relief that is plausible on its face." <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft</u>, 556 U.S. at 663. The Second Amended Complaint meets the burden of setting forth facts that support Plaintiffs' causes of action, and therefore the Motion should be denied in its entirety.

B. **Plaintiffs have Stated Causes of Action Against
Moving Defendants Upon Which Relief May be Granted[6]**

i) ***Plaintiffs have stated a cause of action under the NYSFA***

Moving Defendants' argument, that the NYSFA is inapplicable to Plaintiffs' franchise as it was not sold or bought in New York, overlooks the allegations in the Second Amended Complaint as well as the law under the NYSFA. Rather, the facts and circumstances here, including the fact that the Franchise Agreement is governed by New York law, warrant application

---

[6] To the extent that certain claims against ILKB survive dismissal, those claims also survive against Parrella under the theories of alter ego, veil piercing and agency liability as alleged by Plaintiffs in Count VI of the Second Amended Complaint. <u>See</u> Second Amended Complaint, **Exhibit 1** at ¶¶ 64-73. as Moving Defendants have not moved for dismissal of Count VI, and are unable to raise arguments for the first time on reply.

of the NYSFA.  The NYSFA governs franchise transactions, is "applicable only to specific transactions solicited or accepted in New York, or affecting New York." JM Vidal, Inc. v. Texdis USA, Inc., 764 F. Supp. 2d 599, 616 (S.D.N.Y. 2011) (quoting Century Pac. Inc. v. Hilton Hotels Corp., No. 03 Civ. 8258, 2004 WL 868211, at *5 (S.D.N.Y. Apr. 21, 2004)).  "The [NYSFA] is to be liberally construed to provide the protection intended by the legislature." Reed v. Oakley, 172 Misc. 2d 655, 658 (Sup. Ct. 1996), aff'd, 240 A.D.2d 991(1997).

Here, there can be no doubt that dismissal is improper based on the allegations in the Second Amended Complaint.  Plaintiffs' were solicited for a franchise at the "Discovery Day" which took place in New York. See Second Amended Complaint, **Exhibit 1** at ¶ 20.  It was at the "Discovery Day" where ILKB offered to sell franchises, and the formal offer of a franchise from ILKB to Plaintiffs came from its headquarters in New York and during Discovery Day when the Callens and ILKB Defendants were all in New York. See Callen Dec., ¶ 3; see also A Love of Food I, LLC v. Maoz Vegetarian USA, Inc., 70 F. Supp. 3d 376, 394 (D.D.C. 2014) ("Maoz's offer to sell 'originated from' New York for the purposes of section 681(1) because, by Defendant's own admission, Marinov 'emailed the [offering prospectus], including the Franchise Agreement, *from [his] office in New York,* to Quinn [Wallis].'" (emphasis in original).

Notably, Plaintiffs herein have also filed suit in the United States District Court for the District of Minnesota against the consultant who introduced them to the ILKB franchise.  In a decision on a pre-answer motion to dismiss, the District of Minnesota rejected similar arguments made by Moving Defendants here as it pertains to the NYSFA. See Golden Polar Bear, LLC v. Franchoice, Inc., No. 19-CV-484 (MJD/ECW), 2019 WL 7598650 (D. Minn. Dec. 19, 2019), report and recommendation adopted, No. 19-CV-484 MJD/ECW, 2020 WL 264145 (D. Minn. Jan. 17, 2020).  Specifically, the District of Minnesota held:

Defendants also argue that dismissal of the NYFSA claim here is necessary under General Business Law § 683 because there are no allegations that Defendants or Plaintiffs have connections with New York or that any of the interactions between Plaintiffs and Defendants occurred in New York. (Dkt. 27 at 9-10.) Plaintiffs counter that the NYFSA applies in this case because FCI and Gilfillan solicited Plaintiffs to purchase an ILoveKickBoxing franchise from ILKB, and ILKB accepted Plaintiffs' offer to buy in New York. (Dkt. 30 at 13-14.)

"The New York Franchise Sales Act [ ], GBL §§ 680-695, governs franchise transactions, but only when the sale or offer to sell occurs in New York." *EV Scarsdale Corp. v. Engel & Voelkers N.E. LLC*, 48 Misc. 3d 1019, 1028 (N.Y. Sup. Ct. 2015) (citing *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 70 F. Supp. 3d 376, 393 (D.D.C. 2014), citing *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 616-17 (S.D.N.Y. 2011) ("[T]he NYFSA is applicable only to specific transactions solicited or accepted in New York, or affecting New York."), quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 2004 WL 868211, at *5 (S.D.N.Y. 2004)); *see generally,* N.Y. Gen. Bus. Law § 681(12)[2] (defining for the purposes of necessary disclosures under § 683 when an offer is made in New York).

In this case, the Amended Complaint alleges that ILKB offered and sold franchises only in and from New York State. (Dkt. 22 ¶ 8.) Given that the communications at issue allegedly induced Plaintiffs to ultimately make an offer to purchase a franchise in New York, Plaintiffs' claim is governed by the NYFSA.

Id. at *8.   Furthermore, it has been held that "[a] choice of law provision may provide for extraterritorial application of the New York Franchise Sales Act in certain cases."  Century Pac., Inc. v. Hilton Hotels Corp., No. 03 CIV. 8258 (SAS), 2004 WL 868211, at *5 (S.D.N.Y. Apr. 21, 2004).  One case which upheld that premise was cited by Moving Defendants in Schwartz v. Pillsbury Inc., 969 F.2d 840, 847 (9th Cir. 1992), where the parties under the franchise agreement deemed their agreement to be made in New York, had a New York choice of law provision and the franchisor who drafted the agreement was a New York corporation.  See Mon-Shore Mgmt., Inc. v. Family Media, Inc., 584 F. Supp. 186, 193 (S.D.N.Y. 1984).  Here, the Franchise Agreement states, *inter alia*, that outside of arbitration, "the laws of New York govern this Agreement and all related matters, documents and agreements, without regard to conflicts of laws."[7]  See Second

---

[7]   There are several other sections in the Franchise Agreement which require legal proceedings to be held in New York.  See Second Amended Complaint, **Exhibit 1** at Exhibit A, §§§ 14.1(b), 14.2(b) and 14.3.

Amended Complaint, **Exhibit 1** at Exhibit A, § 16.3.  As such, the Court should deny Moving Defendants' bid for dismissal of Plaintiffs' NYSFA claim.

### ii)  *Plaintiffs have stated a cause of action for breach of contract*

Plaintiffs have stated a cause of action for breach of contract and Moving Defendants' laughable position that Plaintiffs' have not adequately alleged performance must be disregarded as there are a litany of allegations in the Second Amended Complaint which indicate performance under the Franchise Agreement.  See Randolph Equities, LLC v. Carbon Capital, Inc., No. 05 CIV 10889 PAC, 2007 WL 914234, at *4 (S.D.N.Y. Mar. 26, 2007) ("Defendants' contention that Rule 9(c) mandates Plaintiffs to plead with specificity the performance of each condition precedent is misguided. Pursuant to Rule 9(c), it is sufficient to aver generally that all conditions precedent have been performed or have occurred.") (internal citations omitted); see also In re InSITE Servs. Corp., LLC, 287 B.R. 79, 92 (Bankr. S.D.N.Y. 2002) ("Courts rarely dismiss on the ground that the plaintiff has not included the talismanic words, "due performance," in its complaint.").

The Second Amended Complaint asserts that Plaintiffs performed obligations under the Franchise Agreement.  See Second Amended Complaint, **Exhibit 1** at ¶ 22 - 24.  Specifically, Plaintiffs allege that they invested "in excess of a total $364,280.81 in building out, equipping and setting up their ILKB studio."  Id. at ¶ 22.  Furthermore, Plaintiff alleges that: "ILKB required Plaintiffs and other franchisees to participate in its lead generation program . . ." which infers Plaintiffs' performance of that obligation.  Id. at ¶ 23(j).  Plaintiffs go on to state that "Plaintiffs' ILKB studio struggled to remain viable" during its operation.  Id. at ¶ 24.  It is evident that Plaintiffs allege that they performed under the Franchise Agreement.[8]  See Callen Dec., ¶¶ 4-5.

---

[8]  Notably, Moving Defendants do no contend that Plaintiffs failed to perform under the Franchise Agreement.

- 11 -

With respect to the specific sections ILKB breached under the Franchise Agreement, Plaintiffs first allege a breach Section 4.4 of the Franchise Agreement which entails performance by Plaintiffs, and ILKB, of perform certain marketing obligations. <u>See</u> Second Amended Complaint, **Exhibit 1** at Exhibit A, § 4.4.  Plaintiffs further allege that ILKB breached Section 14.2 of the Franchise Agreement, the arbitration clause.  <u>See</u> Second Amended Complaint, **Exhibit 1** at Exhibit A, § 14.2.  Plaintiffs undoubtedly allege that they performed under this section by commencing the arbitration with which ILKB failed and refused to cooperate.  <u>See</u> Second Amended Complaint, **Exhibit 1** at ¶ 27 - 29.  Additionally, C. Callen avers that Plaintiffs have performed their obligations as required by several specific sections of the Franchise Agreement. <u>See</u> Callen Dec. ¶ 4.[9]  As such, the Court must deny the Motion to the extent that it seeks dismissal of Plaintiffs' breach of contract claim against ILKB.

### iii)    *Plaintiffs have stated claims for fraud and negligent misrepresentation*

The Court should deny Moving Defendants application for dismissal of Plaintiffs' claims for fraud and negligence misrepresentation against ILKB and Parrella.  Moving Defendants argue that dismissal of the Plaintiffs claims for fraud and negligent misrepresentation is warranted because Plaintiffs claims are limited to misrepresentations on matters of public record[10], or others

---

[9]  Given Plaintiff's affirmative statement, to the extent that the Court finds that Plaintiffs failed to properly allege performance in the Second Amended Complaint, any deficiency is or can be easily cured.  In <u>Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.</u>, 893 F. Supp. 285, 291 (S.D.N.Y. 1995), the court held:

> Despite this noted infirmity, we do not think that outright dismissal of defendants' second and third counterclaims is warranted given our duty to construe the pleadings to do substantial justice. Instead, we feel it more appropriate to allow defendants thirty days from the date of this order to amend their answer to add an allegation that Mark I–A has performed all of its obligations under the Agreement that would entitle it to the relief sought herein. Therefore, conditioned upon defendants' filing of such amendment, we deny plaintiff's motion to dismiss on these grounds. (internal citations omitted).

[10]  Plaintiffs acknowledge the law in New York is that "[f]acts which are accessible as a matter of public record bar a claim of justifiable reliance necessary to sustain a cause of action for fraud." <u>Simms v. Biondo</u>, 816 F. Supp. 814, 822 (E.D.N.Y. 1993).  However, Plaintiffs aver that ILKB's predecessor affiliate, FC Online Marketing LLC, who was unbeknownst to Plaintiffs, was sued for fraud and violation of franchise laws.  <u>See</u> Second Amended Complaint, **Exhibit 1** at ¶¶ 18(b), 23(a).  Moving Defendants are unable to fault Plaintiffs with failure to search public records of unknown entities.

- 12 -

which constitute "predictions, opinions and puffery." <u>See</u> Motion, Memo of Law at pgs. 19-20. That is simply not true, and a conclusory determination of what constitutes "predictions, opinions and puffery" is inappropriate at this pre-answer dismissal stage.

Plaintiffs allege a myriad of misrepresentations that are actionable fraud, and not simply "predictions, opinions and puffery." ILKB Defendants represented that they would help negotiate a commercial lease for Plaintiffs and that Plaintiffs would not have to sign a personal guaranty. <u>See</u> Second Amended Complaint, **Exhibit 1** at ¶¶ 20, 23(b). This was false and certainly does not qualify as a prediction or opinion. Representations of buildout and investment costs were drastically and knowingly understated. <u>Id.</u> at ¶¶ 21(a), 22, 23(c). This was false and not a prediction or opinion. ILKB represented that 55-68% of potential ILKB studio customers introduced through ILKB's marketing sign up for long term membership contracts, and the average ILKB studio member stayed with the program for 14 months. <u>Id.</u> at ¶¶ 16, 21(h), 23(e). This was false and not a prediction or opinion. ILKB represented that no studio had ever closed and no one was struggling. <u>Id.</u> at ¶¶ 16, 20, 23(f). This was false and not a prediction or opinion.

Even this small sampling of the allegations highlight Plaintiffs' fraud claims are not simply based on "predictions, opinions and puffery." <u>See</u> <u>Zanani v. Savad</u>, 217 A.D.2d 696, 697 (2d Dep't 1995) ("To constitute actionable fraud, the false representation relied upon must relate to a past or existing fact, or something equivalent thereto, as distinguished from a mere estimate or expression of opinion.").[11] Therefore, the Court must deny Moving Defendants' application to dismiss Plaintiffs' causes of action for fraud and negligent misrepresentation on the meritless position that the allegations are "predictions, opinions and puffery."

---

[11] ILKB's FDD contained its own misrepresentations relating to ILKB's receipt of rebates from suppliers to franchisees, as well as omissions relating to closures of franchisees. <u>See</u> Second Amended Complaint, **Exhibit 1** at ¶¶ 18(c), 18(d).

RE\33114\0001\3336423v1

       **iv)**    ***Plaintiffs have stated a claim under CCPA***

Moving Defendants' contention that Plaintiffs are unable to state a cause of action under the CCPA is without merit.  The CCPA was enacted to regulate commercial activities and practices which, "because of their nature, may prove injurious, offensive, or dangerous to the public" and "deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 146 (Colo. 2003) (internal citations omitted).  To prove a private cause of action under the CCPA, a plaintiff must show: "(1) that the defendant engaged in an unfair or deceptive trade practice; "(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiffs injury." Id. at 146-47.  Moving Defendants only argue Plaintiffs fail the third prong; whether there is an impact to the public as actual or potential consumers.

To evaluate the public impact requirement, relevant considerations include: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d at 149.  Colorado courts "have given the [CCPA] a liberal construction, relying on the [CCPA]'s broad purpose and scope." Hall v. Walter, 969 P.2d 224, 230 (Colo. 1998).

Here, Plaintiffs have sufficiently pleaded that the deceptive practices implicated the public as consumers because the ability to own a franchise was marketed, including on the "Discovery Day," to potential franchisees, like Plaintiffs, from across the country. See Callen Dec., ¶ 3; see

also See Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998) ("there is no dispute that Hall and Hammond's deceptive practices implicated the public as consumers because the misrepresentations were directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers"); Ivar v. Elk River Partners, LLC, 705 F. Supp. 2d 1220, 1242 (D. Colo. 2010) ("the complaint does allege—as fact, not conclusion—that Defendants distributed advertisements containing false pricing information 'to various agents, brokers, and purchasers, reaching as far as California' . . . [w]hile not alleging the specific number of potential purchasers affected, this claim suggests a broad scheme."); Francis v. Mead Johnson & Co., No. 1:10-CV-00701-JLK, 2010 WL 5313540, at *6 (D. Colo. Dec. 17, 2010) ("because the statements at issue were made in the course of advertising Defendant's product through product labeling in a significant number of grocery stores in Colorado . . . I presume that these statements have had significant public impact").

Furthermore, it is clear based on the ilovekicboxing.com website, there are franchises located across the country, and reaching into Canada.  See Weitzman Dec, **Exhibit D**.  In another complaint ILKB filed, it alleged "[t]he ILKB franchise system consists of over 150 studios operating throughout the United States and Canada."  See Callen Dec., **Exhibit 2**.  The Court should deny Moving Defendants' Motion seeking dismissal of CCPA claims.

C.      **Plaintiffs' Statutory Claims are not Time-Barred**

Moving Defendants correctly note that both claims under the NYSFA and CCPA are subject to a three-year statute of limitations.  N.Y. Gen. Bus. Law § 691(4); C.R.S. 6-1-115.  Where the parties disagree, is when the limitations period is triggered and whether arbitration tolls it.

Moving Defendants' summarily conclude, without any case law support, that the arbitration proceeding commenced in February 2019 does not serve to toll the claims.  In that regard, they deny Plaintiffs' citation to Individual Securities, Ltd. v. Ross, 152 F.3d 918, *1-2 (2nd

- 15 -

Cir. 1998) because Plaintiffs have cited no equivalent JAMS rule.  See Graham v. City of Albany, No. CIV. 1:08CV892RFT, 2009 WL 4263510, at *5 (N.D.N.Y. Nov. 23, 2009) ("CPLR § 204(b) 'tolls the statute of limitations during the pendency of an arbitration that ends with a determination that there was no obligation to arbitrate.'") (quoting Individual Securities, Ltd. v. Ross, 152 F.3d 918 (2d Cir. 1998). However, Rule 6(c) JAMS Comprehensive Arbitration Rules & Procedures provides:

> "If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. An administrative suspension shall toll any other time limits contained in these Rules, applicable statutes or the Parties' agreement."

This is exactly what happened here, and Moving Defendants' should not be rewarded for their delay in complying and subsequent outright refusal to abide by the terms of the Franchise Agreement to arbitrate these claims and force Plaintiffs into federal court.  Put simply, a party who believes that its claim is arbitrable should initiate arbitration without the need to concurrently commence a civil action as a protective measure against expiration of the statute of limitations. See Joseph Francese, Inc. v. Enlarged City Sch. Dist. of Troy, 95 N.Y.2d 59, 63-64 (2000).

Moving Defendants' argument relating to the CCPA takes a different tone, as it acknowledges that a fraud-based claim under the  CCPA "accrues when the defrauded person has knowledge of facts which, in the exercise of proper prudence and diligence, would enable him to discover the fraud perpetrated against him."  Chidester v. E. Gas & Fuel Assoc., 859 P. 2d 222, 227 (Colo. App. 1992).  However, Moving Defendants' then ask the Court to agree with their general conclusion that Plaintiffs "must have been aware of the conduct they complained of no later than June 2017" when they had incurred higher startup costs and no help negotiating the lease. See Motion, Memo of Law at p. 15.  This position is misguided and asks the Court, at the dismissal stage, to determine whether these two instances triggered Plaintiffs duty to investigate the litany

- 16 -

of other misrepresentations alleged.  For example, Moving Defendants ask the Court to conclude that Plaintiffs should have known, or even had a duty to investigate, whether or not "the average ILKB studio member did not stay with the program for 14 months" before they even opened to the public.  <u>See</u> Second Amended Complaint, **Exhibit 1** at ¶ 23(e).  Only a tortuous interpretation of the law would place such a burden on Plaintiffs simply because startup costs were higher than had been represented.  As the Complaint alleges, the misrepresentations were discovered "[o]ver the years" after Plaintiffs signed the Franchise Agreement. <u>See</u> Second Amended Complaint, **Exhibit 1** at ¶ 23.  The Court should deny dismissal of the statutory claims based on statute of limitations.

II.      **PLAINTIFFS HAVE SUFFICIENTLY ALLEGED PERSONAL JURISDICTION**

A.      **Legal Standard**

Where a court has not conducted an evidentiary hearing on personal jurisdiction, in opposing a motion to dismiss on personal jurisdiction grounds, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." <u>DiStefano v. Carozzi N. Am., Inc.</u>, 286 F.3d 81, 84 (2d Cir. 2001) (citing <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999)).  To make this showing, a plaintiff may demonstrate "through its own affidavits and supporting materials, containing a good faith averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." <u>In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.</u>, 399 F. Supp. 2d 325, 330 (S.D.N.Y. 2005) (alterations omitted) (quoting <u>Whitaker v. Am. Telecasting, Inc.</u>, 261 F.3d 196, 208 (2d Cir. 2001)).

When evaluating a motion to dismiss for lack of personal jurisdiction, courts "may consider materials outside the pleadings, including affidavits and other written materials." <u>Jonas v. Estate of Leven</u>, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).  In deciding whether the plaintiff has met this burden, the pleadings and affidavits must be viewed in the light most favorable to the plaintiff, with all doubts resolved in its favor.  <u>See</u>, <u>e.g.</u>, <u>DiStefano</u>, 286 F.3d at 84; <u>Whitaker</u>, 261 F.3d at

- 17 -

208.   It is well-settled law that "[i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).   Given this leeway, the court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."  Id. (quoting Marine Midland Bank, N.A., 664 F.2d at 904); accord In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 399 F. Supp. 2d at 330.

**B.     ILKB Too, Castellini and York are Subject to Personal Jurisdiction under the Theory of Successor Liability**

The Second Amended Complaint, on its face, more than satisfies Plaintiffs' pleading requirement to allege personal jurisdiction over ILKB Too, Castellini and York under the theory of successor liability.[12]  See Second Amended Complaint, **Exhibit 1** at ¶¶ 31-34, 74-79.  Moving Defendants ask the Court to disregard these allegations, which are assumed true and given every favorable inference at this juncture, on the grounds that they are conclusory and fail to meet the pleading requirements.   At this pre-discovery stage, neither their conclusory arguments nor dismissal of Plaintiffs' factual contentions warrant dismissal of the Second Amended Complaint.

Under New York law, "[i]t is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor."  Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 244 (1983).  However, "[a] corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations."  Id. at 245; see Nationwide Mut. Fire Ins. Co. v. Long Island Air Conditioning,

---

[12]  Plaintiffs readily concede that ILKB Too, Castellini and York are not citizens of New York.

Inc., 78 A.D.3d 801, 802 (2d Dep't 2010) (finding "[t]his doctrine is also applicable in breach of contract actions").  "For a successor corporation to establish that it is entitled to summary judgment on the ground that it is not liable, it must demonstrate that none of the four aforementioned exceptions applies."  Nationwide, 78 A.D.3d at 802.

Upon pleading of successor liability, "[i]t is well-settled 'that when a person is found to be a successor in interest' to a person over whom the court has personal jurisdiction, 'the court gains personal jurisdiction over [the successor] simply as a consequence of their status as a successor in interest, without regard to whether they had any other minimum contacts with the state.'"  Leon v. Shmukler, 992 F. Supp. 2d 179, 190 (E.D.N.Y. 2014) (quoting LiButti v. United States, 178 F.3d 114, 123 (2d Cir. 1999); see Int'l Private Satellite Partners, L.P. v. Lucky Cat, 975 F.Supp. 483, 486 (S.D.N.Y.1997) (denying dismissal motion where plaintiff alleged successor was bound by a forum selection clause based on a de facto merger, the Court held "in some circumstances a corporation may be held liable for breach of another corporation's contracts on a theory of successor liability")[13]; see also Time Warner Cable, Inc. v. Networks Grp., LLC, No. 09 CIV 10059 DLC, 2010 WL 3563111, at *6 (S.D.N.Y. Sept. 9, 2010) ("Because the plaintiff has stated a claim [] for successor liability, there is personal jurisdiction over the [defendants]").

### i)      *ILKB TOO, Castellini and York expressly or impliedly assumed ILKB's liabilities*

ILKB Too, Castellini and York's contention that they did not assume the liabilities of ILKB with respect to the asset purchase raises a litany of questions of fact which make dismissal inappropriate at this juncture.  First, while they contend that the transaction was a mere "asset purchase," it is telling that they have not produced any documentation which consummated the

---

[13] The court in Int'l Private Satellite Partners reasoned, "[r]egardless of whether plaintiff will succeed in carrying its ultimate burden of establishing personal jurisdiction by a preponderance of the evidence, these allegations, if true, are factors tending to show the existence of a *de facto* merger."  Int'l Private Satellite Partners, L.P., 975 F.Supp at 487.

transaction that would dispel any notion of assumption of liabilities.  Nor have Moving Defendants

produced a declaration, of someone with personal knowledge, attesting that no liabilities of ILKB

were assumed in the transaction.  At the very least, discovery is warranted to determine whether

ILKB Too, Castellini and York express or impliedly assumed ILKB's liabilities.  See Kidz Cloz,

Inc. v. Officially for Kids, Inc., No. 00–CV–6270, 2002 WL 1586877, at *5 (S.D.N.Y. July 17,

2002) (holding that the plaintiffs were entitled to discovery on the issue of a *de facto* merger where

the plaintiff alleged that the buyer "took complete control of [the seller's] entire ongoing business",

and "allege[d] at least some of the elements of a *de facto* merger"); see also Sweatland v. Park

Corp., 181 A.D.2d 243, 245 (4th Dep't 1992) ("plaintiff should be allowed to conduct further

discovery to determine whether the transaction constituted a de facto merger").

Second, pursuant to Section 12.1 of the Franchise Agreement, entitled "Assignment by

[ILKB]", it provides:

> We have the right to Transfer this Agreement, and all of our rights and privileges
> hereunder to any other person, firm or corporation ("Our Assignee"); provided that,
> in respect to any Transfer ("Assignment by Us") resulting in the subsequent
> performance by Our Assignee of the functions of franchisor hereunder: (i) **at the
> time of Assignment by Us, Our Assignee must be financially responsible and
> economically capable of performing the obligations of franchisor hereunder**;
> and (ii) **Our Assignee must expressly assume and agree to perform such
> obligations**. **If there is an Assignment by Us, we will be relieved of all
> obligations or liabilities after the effective date of the assignment**.

See Franchise Agreement, **Exhibit 1** at Exhibit A, §12.1 (emphasis added).  It is clear that based

on the plain language of the Franchise Agreement, any assignment or asset sale would entail

liability assumption.  Last, the letter issued by ILKB Too, Castellini and York stated "[a]s of

June 26th, 2020 agreements were executed to acquire all assets and **take full control** of the

[ILKB]."  See Letter, **Exhibit 1** at Exhibit B.  It is therefore implied that by taking **full** control of

ILKB, they also took over and assumed any liabilities.  See Callen Dec., ¶¶ 5-7.  As such, there

are sufficient factual allegations between Second Amended Complaint and annexed exhibits to

- 20 -

substantiate the claim that ILKB Too, Castellini and York expressly or impliedly assumed the ILKB's liabilities.

### ii)    *Plaintiffs have pleaded merger or de facto merger, or mere continuation*[14]

Plaintiffs have sufficiently alleged merger or de factor merger (and/or mere continuation) to withstand pre-discovery dismissal.  The Motion is nothing more than an attempt to avoid disclosure of information relevant to successor liability against ILKB Too, Castellini and York.

A de facto merger occurs when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'" Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003) (quoting Schumacher, 59 N.Y.2d at 245).  "The purpose of the doctrine of de facto merger is to avoid [the] patent injustice which might befall a party simply because a merger has been called something else." Cargo, 352 F.3d at 46 (internal citations omitted).  "In conducting such an inquiry, [the court] must consider factors such as, but not limited to, whether the successor purchased the predecessor's intangible assets, goodwill, customer lists, accounts receivable, trademarks, and records, and whether there was any continuity of ownership, management, employees or the business in general." State Farm Fire & Cas. Co. v. Main Bros. Oil Co., 101 A.D.3d 1575, 1578–79 (3d Dep't 2012); see Fitzgerald v. Fahnestock & Co., 286 A.D.2d 573, 575 (1st Dep't 2001) ("Courts will look to whether the acquiring corporation was

---

[14] The Second Circuit has noted that many courts find the de facto merger and mere continuation exceptions so similar that "they may be considered a single exception." *Cargo,* 352 F.3d at 45 n. 3 (citing cases).  "The mere continuation exception to the traditional rule applies where it is not simply the business of the original corporation which continues, but the corporate entity itself." Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007) (internal citations omitted); see Societe Anonyme Dauphitex v. Schoenfelder Corp., No. 07 CIV. 489, 2007 WL 3253592, at *6 (S.D.N.Y. Nov. 2, 2007) ("The mere continuation exception is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors.... Thus, the underlying theory of the exception is that[ ] if [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.") (internal citations omitted).  "While some courts have held that the predecessor corporation must be extinguished in the sale for the mere continuation exception to apply, many others have found that the exception still applies if the predecessor transfers its assets, business location, address, employees, good will and management, and it is logical to infer that the successor corporation was created to avoid liability." Silverman, 2010 WL 2899438, at *5.

seeking to obtain for itself intangible assets such as good will, trademarks, patents, customer lists and the right to use the acquired corporation's name.").

Applying New York law, the Second Circuit has stated observed that factors to be considered to determine if the activity constitutes a de factor merger include: "[1] continuity of ownership; [2] cessation of ordinary business and dissolution of the acquired corporation as soon as possible; [3] assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, [4] continuity of management, personnel, physical location, assets and general business operation." Cargo, 352 F.3d at 46. "These factors should be analyzed in a flexible, rather than formulaic, manner, and the court should consider whether, in substance, it was the intent of [the successor] to absorb and continue the operation of the [predecessor]." Silverman Partners LP v. Verox Grp., No. 08 CIV 3103 (HB), 2010 WL 2899438, at *4 (S.D.N.Y. July 19, 2010) (internal citations omitted). The Second Circuit has declined to decide all four factors must be met in order to find a de facto merger, and state and district courts in this circuit have found a de facto merger without all four being present. Cargo, 352 F.3d at 46; Fitzgerald, 730 N.Y.S.2d at 71 ("Not all of these elements are necessary to find a de facto merger."); Lumbard v. Maglia, Inc., 621 F.Supp. 1529, 1535 (S.D.N.Y.1985) ("Not all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a de facto merger.") (internal citations omitted); Allen Morris Commercial Real Estate Servs. Co. v. Numismatic Collectors Guild, Inc., No. 90 Civ. 264(SWK), 1993 WL 183771, at *6 (S.D.N.Y. May 27, 1993) (quoting Lumbard); Sweatland v. Park Corp., 181 A.D.2d 243, 246, 587 N.Y.S.2d 54 (4th Dep't 1992) ("Public policy considerations dictate that, at least in the context of tort liability, courts have flexibility in determining whether a transaction constitutes a de facto merger. While factors such as shareholder and management

continuity will be evidence that a de facto merger has occurred.").  Plaintiffs have alleged the requisite elements of a de facto merger.

First, continuity of ownership is present in the pre-discovery record.  Moving Defendants summarily conclude, without any basis or factual citation, that Parrella does not "own any portion of ILKB Too," and hides that conclusion in their brief.  See Motion, Memo of Law at p. 11.  As indicated above, Moving Defendants Motion is devoid of any evidence which would defeat Plaintiffs' allegations of continuity of ownership, such as the alleged "asset purchase" documents, corporate formation documents, or even a declaration from someone with personal knowledge.  Instead, the facts and allegations in the pre-discovery record indicate otherwise.  Rather, according to his LinkedIn profile, Parrella states that he is the "CEO at iLoveKickboxing.com."  See Weitzman Dec, **Exhibit A**.  It is that same domain name from which Castellini sent the Letter.  See Letter, **Exhibit 1** at Exhibit B.  Additionally, it is notable that the same counsel is representing ILKB, Parrella, ILKB Too, Castellini and York in this action, and is listed on both ILKB and ILKB Too's corporate registrations with their respective states.  See Weitzman Dec, **Exhibits B** and **C**.

Second, cessation of ordinary business is present in the pre-discovery record.  While ILKB is still listed as an active entity with the New York State Division of Corporations, ILKB has certainly ceased business operations. See In re New York City Asbestos Litig., 15 A.D.3d 254, 257 (1st Dep't 2005) ("We acknowledge that the dissolution criterion for a de facto merger may be satisfied, notwithstanding the selling corporations continued formal existence, if that entity is shorn of its assets and has become, in essence, a shell.") (internal citations omitted); see also Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 98 (S.D.N.Y. 2002), aff'd, 352 F.3d 41 (2d Cir. 2003) ("it seems reasonably sufficient if the seller has become an empty shell even though not dissolved"); Fitzgerald, 286 A.D.2d at 575 ("So long as the acquired corporation is shorn of its

- 23 -

assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of a

de facto merger will be made.").  As the letter indicates, all of ILKB's assets were purchased, and

therefore it is reasonable to assume that ILKB is a shell corporation with no assets to its name.

See Letter, **Exhibit 1** at Exhibit B.

Third, as indicated above, assumption by the successor of the liabilities ordinarily

necessary for the uninterrupted continuation of the business of the acquired corporation is present

in the pre-discovery record.  "While the successor corporation must assume liabilities so that it can

continue the ordinary business of the predecessor without interruption, it does not need to assume

all actual or potential liabilities and debts." Silverman, 2010 WL 2899438 at *5 (internal citations

omitted).  Here, in order for ILKB Too, Castellini and York to take over as franchisor of

iLoveKickboxing franchise, it must have obtained licenses, permits, intellectual property,

franchise agreements, vendor contracts, customer lists, goodwill, registrations, domain names and

the like to operate the iLoveKickboxing franchise.  See Wensing v. Paris Industries–New York,

158 A.D.2d 164, 167 (3d Dep't 1990) (motion to dismiss was properly denied where evidence

suggested that successor acquired both fixed and intangible assets, including customer lists, which

required an opportunity to conduct discovery on successor-liability claim).

Last, continuity of management, personnel, physical location, assets and general business

operation in the pre-discovery record.  See Silverman, 2010 WL 2899438 at *4 ("Plaintiff alleges

that Verox Technologies operates under the same management . . . uses two of the same

independent sales representatives, sells the same products offered by Verox Group, and uses the

same customer lists. These allegations are sufficient to satisfy this factor for a de facto merger.");

see also Burgos v. Pulse Combustion, Inc., 227 A.D.2d 295, 295–96 (1st Dep't 1996) (lower court

correctly found issues of fact bearing on successor liability, based on evidence that defendant

purchased almost all of predecessor's fixed assets and intangibles, that defendant assumed a name nearly identical to predecessor's, that at least one officer from predecessor was retained by defendant, and that same products were manufactured at plants transferred by predecessor to defendant).  Based on a simple reading of the Letter, there is no doubt that ILKB Too is engaged in the virtually identical business of ILKB, operating the iLoveKickboxing franchise.  See Letter, **Exhibit 1** at Exhibit B.  The Letter even indicates that "we have already begun working with through the weekend with the corporate team to get up to speed . . . and very much look forward to learning from them" which intimates that the corporate team of ILKB also works for ILKB Too. Id.  The Letter also indicates that "all assets" were purchased, indicating a continuity of assets.  Id. According to the iLoveKickboxing.com website, they iLoveKickboxing franchise is still being operated out of the same office before and after the "asset purchase."  See Franchise Agreement, **Exhibit 1** at Exhibit A, §16.1; see also Weitzman Dec., **Exhibits D** and **E**.   Indeed, many of the same employees, including management employees, of ILKB have continued with the acquired ILKB business to continue the same ILKB (or "iLoveKickboxing") brand, methods and practices and individuals, such as Michael Parrella, who possessed ownership interest in ILKB, maintain an ownership interest and a role in the acquired ILKB business.  See Callen Dec., ¶¶ 6-7.

As such, based on the facts and allegations in the pre-discovery record, denial of Moving Defendants' Motion on successor liability is warranted.  See Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc., 944 F. Supp. 240, 249 (S.D.N.Y. 1996) ("Plaintiffs allege that the formation of NIA/Kornreich LLC was a merger and that the successor assumed the liabilities of all the companies that it acquired. Should plaintiff be able to prove these facts, it could prevail on a theory of successor liability, which necessitates denial of defendants' motion to dismiss this claim.") (internal citations omitted).

iii)     *ILKB entered into the transaction to fraudulently escape liabilities*

The merger or de facto merger was entered into fraudulently or wrongfully to avoid ILKB's liabilities to Plaintiffs and other similarly situated franchisees.  The merger or de facto merger took place at a time when it was known that the arbitration and other legal actions by Plaintiffs and other franchisees were pending against ILKB.  Indeed, transfer of all or substantially all of ILKB's assets would fraudulently and wrongfully evade ILKB's liabilities to Plaintiffs and other similarly situated creditors.

## III.   POLAR BEAR HAS STANDING

Finally, with respect to Moving Defendants' arguments concerning Golden Polar Bear, LLCs' standing, ILKB gave prior written authorization for assignment of rights to Golden Polar Bear, LLC.  See Callen Dec., ¶ 8.

### CONCLUSION

For the foregoing reasons, the Court should deny Moving Defendants' Motion in its entirety, together with such other and further relief as to this Court may seem just and proper.

Dated:   New York, New York           **ROSENBERG & ESTIS, P.C.**
         February 22, 2021            *Attorneys for Plaintiffs*


                                      By:    *[s] Justin S. Weitzman*
                                             Justin S. Weitzman
                                      733 Third Avenue
                                      New York, New York 10017
                                      (212) 867-6000

- 26 -