UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
THOMAS CALLEN, COURTNEY CALLEN,
and GOLDEN POLAR BEAR, LLC,

                          Plaintiffs,            **MEMORANDUM AND ORDER**

 - against -                            2:20-cv-3345 (DRH) (JMW)

ILKB, LLC, MICHAEL PARRELLA, RYAN
HEALY, and SCOTT FERRARI, each
individually, and ILKB TOO, LLC, DANIEL
CASTELLINI, and SHAUN YORK, each as
successor by merger to ILKB, LLC,

                          Defendants.
---------------------------------------------------------------X

**APPEARANCES**

**ROSENBERG & ESTIS, P.C.**
Attorneys for Plaintiffs
733 Third Avenue
New York, NY 10017
By:     John D. Giampolo, Esq.
        Justin Scott Weitzman, Esq.

**GORDON REES SCULLY MANSUKHANI, LLP**
Attorneys for Defendants ILKB, LLC, Michael Parrella, ILKB Too, LLC, Daniel
Castellini, and Shaun York
1 Battery Park Plaza, 28th Floor
New York, NY 10004
By:     Peter G. Siachos, Esq.
        David Oxamendi, Esq.
        Matthew P. Gallo, Esq.


**HURLEY, Senior District Judge:**

## INTRODUCTION

       Plaintiffs Thomas Callen, Courtney Callen, and Golden Polar Bear, LLC

(collectively, "Plaintiffs") bring six causes of action against Defendants ILKB, LLC

("ILKB"), Michael Parrella, Ryan Healy, and Scott Ferrari (together the "Predecessor

Defendants"): violation of the New York State Franchise Sales Act ("NYSFSA"), N.Y. Gen. Bus. L. § 680 et seq.; breach of contract; common law fraud; negligent misrepresentation; violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 et seq. ("CCPA"); and alter ego, veil piercing and agency liability. Plaintiffs also bring one cause of action—successor liability—against ILKB Too, LLC ("ILKB Too"), Daniel Castellini, and Shaun York, each as successor by merger to ILKB (together, the "Successor Defendants," and with the Predecessor Defendants, "Defendants").

Presently before the Court is Defendants ILKB, Parrella, ILKB Too, Castellini, and York's (the "Moving Defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1),[1] 12(b)(2), and 12(b)(6).  For the reasons stated below, their motion is granted in part and denied in part.

## BACKGROUND

The following facts from the Complaint, the exhibits attached thereto, and other materials properly considered on the Moving Defendants' motion are taken as true for the purposes of this Order.

Thomas and Courtney Callen allege the Predecessor Defendants misrepresented and omitted material information about ILKB, inducing the Callens to purchase and run an ILKB franchise.  (Second Am. Compl. ¶ 15 ("SAC") [DE 18]).  Scott Ferrari, President and Director of Franchise Development at ILKB, for

---

[1]     The Court construes the Successor Defendants' standing argument under Rule 12(b)(1).  *See infra* Discussion Section II.

example, stated in February 2015 that [1] "90% of marketing was and would be accomplished by ILKB corporate,"[2] (*id.* ¶¶ 16, 20); [2] "55-68% of potential ILKB studio customers introduced through ILKB's marketing sign up for long term membership contracts," (*id.* ¶¶ 16, 21(h)); [3] "the average ILKB studio member stayed with the program for 14 months," (*id.* ¶ 16); [4] "no ILKB franchise locations struggled or went out of business," (*id.*); and [5] "all or the average ILKB franchises broke even with less than 200 members and receive six figure income with less than 300 members," (*id.*).

In March 2015, the Callens received an ILKB Financial Disclosure Document allegedly not registered in New York State that omitted that: [6] "ILKB franchise owner and founder, [Michael] Parrella, had filed for bankruptcy and had been discharged in 2008," (*id.* ¶ 18(a)); [7] "Parrella or FC Online Marketing, LLC, the predecessor affiliate of ILKB, had been the charged with fraud, violation of franchise laws or theft of services," (*id.* ¶ 18(b)); [8] "ILKB did not receive rebates from suppliers to franchisees," (*id.* ¶¶ 18(c), 20, 21(f)); and [9] "ten ILKB franchised units had closed in 2015 and five had closed in 2014," (*id.* ¶ 18(d)).

Defendants also allegedly misrepresented and failed to disclose that [10] "ILKB would retain profits at the expense of franchisees through Defendants' lead generation program." (*Id.* ¶ 19).

---

[2]    The Court refers to each numbered misrepresentation and omission as a "Representation."

In February 2016, Defendants invited Plaintiffs and other prospective franchisees to New York for its "Discovery Day." (*Id.* ¶ 20). Ryan Healy, who identified himself as ILKB's Vice President of Franchise Operations, allegedly repeated some of the above misrepresentations and added that [11] "the initial investment for an ILKB franchise studio was $228,000 to $273,000," (*id.* ¶¶ 20, 21(a)); [12] "all or the average ILKB franchise breaks even at 200 members, reaches profitability in four to six months, and experiences approximately 80% profit for each member beyond 200," (*id.* ¶¶ 20, 21(b)); [13] "ILKB corporate would negotiate with landlords for franchisees and the Callens would not need to sign a personal guarantee for a commercial lease for space for their ILKB studio," (*id.* ¶ 20); and [14] "the business worked with an absentee owner model," (*id.* ¶¶ 20, 21(c)). Around the same time, Parrella, Ferrari, Healy allegedly reiterated some of the above and further stated that [15] "the average ILKB franchise generated in excess of $130,000 in profits for the owners per year," (*id.* ¶ 21(d)), and [16] ILKB's marketing "would result in at least 100 trials a month on the basis of a $2,500 monthly marketing budget," (*id.* ¶ 21(e), (g)).

On February 29, 2016, the Callens signed an ILKB franchise agreement, enabling them to open a kickboxing studio covering three territories in Colorado Springs, Colorado. (*Id.* ¶ 22; *see* Franchise Agreement ("Fr. Agmt."), Ex. A to SAC). They invested more than $364,280.81 in building out, equipping and setting up the studio, and even signed a personal guarantee to lease the space. (SAC ¶ 23). They also formed Golden Polar Bear, LLC to conduct the business of their franchise. (*Id.*

¶ 5).  After the studio's June 2017 opening, the Callens learned that it would not be profitable with absentee ownership and instead "required 50 to 60 unpaid hours a week by owners."  (*Id.* ¶¶ 22–23).  "Over the years," as their franchise struggled to remain viable, they further discovered the alleged falsity of the rest of the Representations.  (*Id.* ¶¶ 23–25).

Pursuant to their Franchise Agreement, the Callens commenced an arbitration proceeding against the Predecessor Defendants on February 26, 2019.  (*Id.* ¶ 27; Fr. Agmt. § 14.2).  Defendants, however, have refused to deposit their portion of the arbitration fees, and the proceeding has been held in abeyance.  (SAC ¶ 29).

Plaintiffs allege that, as of June 26, 2020, ILKB Too—through its limited liability company members Castellini, York, and Parrella—acquired "all assets" and had taken "full control" of ILKB, thereby becoming its successor.  (*Id.* ¶¶ 10, 31–32). Castellini is ILKB Too's Chief Executive Officer and York its Chief Operating Officer. (*Id.*).

Plaintiffs brought this suit on July 24, 2020.  [DE 1].  In response to the Court's Order to Show Cause concerning subject-matter jurisdiction, Plaintiffs amended their complaint on August 31, 2020.  [DE 15].  Then, in response to the Moving Defendants' letters requesting leave to move to dismiss, Plaintiffs amended their complaint a second time.  [DE 18].  On March 12, 2021, the Moving Defendants filed the instant motion to dismiss.

On February 17, 2022, the Court again ordered the parties to show cause as to whether the pending arbitration proceeding precludes further litigation in federal

court and whether the Court should stay this case until its resolution.  Order to Show Cause ("OTSC") [DE 47].  In responding, both parties expressly contend that the Court "should hear and decide this case."  Pl. Resp. to OTSC at 1 [DE 49] ("[T]his Court should and must hear and decide this case rather than . . . ."); Def. Resp. to OTSC at 1 [DE 48] ("[T]his Court should hear and decide this case rather than staying it pending arbitration.").

## DISCUSSION

The Court will address the issues in the following order: (I) personal jurisdiction over the Successor Defendants; (II) Plaintiff Golden Polar Bear, LLC's standing; and (III) Plaintiffs' failure to state a claim.

### I.    Personal Jurisdiction

The Successor Defendants move the Court pursuant to Rule 12(b)(2) to dismiss them for lack of personal jurisdiction, both specific and general.  Plaintiffs respond that personal jurisdiction exists pursuant to successor liability.

### A.    Legal Standard

Plaintiffs bear the burden of establishing the Court's personal jurisdiction over the Moving Defendants.  *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  Where the parties have not yet conducted discovery, a plaintiff may "mak[e her] prima facie showing of [personal] jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence."  *Mortg. Funding Corp. v. Boyer Lake Pointe, L.C.*, 379 F. Supp. 2d 282, 285 (E.D.N.Y. 2005).  As such, the Court must view the pleadings in the light most favorable to the plaintiff, *Sills v. The Ronald Reagan Presidential Found., Inc.*,2009 WL 1490852, *5 (S.D.N.Y. May

27, 2009), "may rely on additional materials outside the pleadings," *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016), and resolve doubts "in the plaintiff's favor, notwithstanding a controverting presentation [of evidence] by the moving party," *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993).

A court need not, however, "draw argumentative inferences in the plaintiff's favor" nor "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) and *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). A plaintiff "may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini* 148 F.3d at 185); *accord Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 Fed. App'x 768, 769 (2d Cir. 2014) ("[A plaintiff] must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone.").

## B. Analysis

In their opening motion papers, the Successor Defendants contest both general and specific personal jurisdiction. Def. Mem. at 3–12 [DE 28-1]. A court's exercise of general jurisdiction—"extend[ing] to 'any and all claims' brought against a defendant"— occurs "only when a defendant is essentially at home in the State" where the court sits. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct.

1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).   Specific, or "case-linked," jurisdiction arises from the "affiliatio[n] between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919.   Plaintiffs make no argument under either of these doctrines.   Pl. Opp. at 18–26 [DE 28-3].

Rather, Plaintiffs contend personal jurisdiction over the Successor Defendants exists "under the theory of successor liability." *Id.*   New York recognizes that, "in certain circumstances[,] a successor corporation 'may inherit its predecessor's jurisdictional status.'" *Semenetz v. Sherling & Walden, Inc.*, 21 A.D.3d 1138, 1140 (N.Y. App. Div., 3d Dep't 2005), *aff'd*, 7 N.Y.3d 194 (N.Y. 2006); *Time Warner Cable, Inc. v. Networks Grp., LLC*, 2010 WL 3563111, at *5 (S.D.N.Y. Sept. 9, 2010) (asserting personal jurisdiction over limited liability companies because "[a]n allegation of successor liability against an entity whose predecessor is subject to personal jurisdiction can provide personal jurisdiction over the successor entity" (citing *Libutti v. United States*, 178 F.3d 114, 124–25 (2d Cir. 1999))).   "It is well-settled" that, should the Successor Defendants be "successor[s] in interest to [an entity] over whom the Court has personal jurisdiction," they are thereby subject to the Court's jurisdiction "without regard to whether they had any other minimum contacts with the state." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 190 (E.D.N.Y. 2014) (Bianco, J.) (internal quotation marks omitted); *see Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (citing and quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

Accordingly, whether the Court has personal jurisdiction over the Successor Defendants turns on whether the Plaintiffs have sufficiently alleged successor liability against them. *Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 2022 WL 667606, at *9 (S.D.N.Y. Mar. 7, 2022). Because Plaintiffs have adequately pleaded successor liability, *see infra* Discussion Section III.B.5, the Court has personal jurisdiction over the Successor Defendants given the present state of the proceedings. The Successor Defendants' motion on this issue is denied.

## II.   Standing

The Moving Defendants allege that Plaintiff Golden Polar Bear, LLC lacks standing in this matter. Accordingly, and even though they moved under Rule 12(b)(6), the Court construes the issue under the Rule 12(b)(1) standard. *E.g.*, *Evans v. Port Auth. of N.Y. & N.J.*, 2017 WL 3396444, at *1 n.2 (E.D.N.Y. Aug. 8, 2017); *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, 2013 WL 3762882, at *1 n.1 (S.D.N.Y. July 18, 2013). The two standards, nevertheless, are "almost identical," except for the "significant difference [] that a court may consider extrinsic evidence when evaluating a motion to dismiss under Rule 12(b)(1) for lack of standing." *Reyes v. Sofia Fabulous Pizza Corp.*, 2014 WL 12768922, at *2 (S.D.N.Y. Apr. 7, 2014) (Francis, Mag. J.), *report and recommendation adopted*, 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014).

### A.   Legal Standard

The standing doctrine concerns a federal court's jurisdictional power to hear a plaintiff's suit. *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Plaintiffs must have standing for each of

their claims and forms of relief sought. *Id.* (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)). For standing, Article III of the Constitution demands (1) the plaintiff to have "suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An "injury-in-fact" is a "concrete and particularized and actual or imminent, not conjectural or hypothetical" invasion of a legally protected interest. *Id.* at 736 (quoting *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547–48 (2016)). At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice to show standing. *Id.* (quoting *Lujan*, 504 U.S. at 561).

### B.    Analysis

The SAC alleges that Golden Polar Bear, LLC is the entity through which the Callens conducted their iLoveKickboxing franchise. SAC ¶ 5. The Moving Defendants contend "Golden Polar Bear is not a proper plaintiff to any claim but the CCPA claim." Def. Mem. at 16–17. Courtney Callen avers that she and Thomas Callen assigned their rights to Golden Polar Bear pursuant to ILKB's prior written authorization. Decl. of Courtney Callen ¶ 8 [DE 28-5]. The Moving Defendants point out that Plaintiffs do not provide a copy of the written authorization or the assignment and likewise fail to supply any of their details, *e.g.*, what was authorized or assigned and when. Def. Reply at 4–5 [DE 28-6].

"Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."

*Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal citations and quotation marks omitted). Golden Polar Bear, LLC has not demonstrated its standing on any of the challenged claims. In the absence of any details and the assignment itself, Courtney Callen's blanket statement that the Callens assigned their rights to Golden Polar Bear, LLC does not, at this juncture, suffice to confer standing on Golden Polar Bear, LLC with respect to the claims challenged by the Moving Defendants.

Accordingly, the Court grants the Moving Defendants' motion to dismiss Golden Polar Bear, LLC for lack of standing on all claims except the CCPA claim.

## III. Failure to State a Claim

The Moving Defendants contend Plaintiffs have failed to state a claim on their NYSFSA, breach of contract, common law fraud, negligent misrepresentation, CCPA, and successor liability claims. They lodge no argument with respect to alter ego liability claims.

### A. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## B.    Analysis

The Court organizes the Moving Defendants' arguments by claim, addressing them in the following order: (1) NYSFSA; (2) breach of contract; (3) common law fraud

and negligent misrepresentation (different claims argued jointly in the papers); (4) CCPA; and (5) successor liability.

As a preliminary matter, the Court declines to consider, on this portion of Defendants' motion, any materials Plaintiffs submitted in their opposition which were not attached to, integral to, or incorporate by reference in the SAC.  *See* Decl. of Justin Scott Weitzman [DE 28-4]; Decl. of Courtney Callen; *see, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–55 (2d Cir. 2002).

### 1.    NYSFSA

The Moving Defendants argue the NYSFSA claim (a) is barred by the statute of limitations and (b) fails to state a claim on which relief can be granted.

### a.    Statute of Limitations

The Moving Defendants contend Plaintiffs' NYSFSA claim is untimely.  "A federal court sitting in diversity applies the forum state's statute of limitations provisions, as well as any provisions that govern the tolling of the statute of limitations."  *Wang v. Palmisano*, 51 F. Supp. 3d 521, 530 (S.D.N.Y. 2014); *see Schermerhorn v. Metro. Transp. Auth.*, 156 F.3d 351, 354 (2d Cir. 1998) ("In diversity cases, state statutes of limitations govern the timeliness of state law claims, and state law determines the related questions of what events serve to commence an action and to toll the statute of limitations." (quoting *Diffley v. Allied–Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990))).  New York state law subjects Defendants to liability under the NYSFSA so long as Plaintiffs brought their claim "before the expiration of three years after the act or transaction constituting the violation."  N.Y. Gen. Bus. Law § 691(4).

The limitations period for such claims "begins when the franchises were purchased." *W. Valley KB Venture, LLC v. ILKB LLC*, 2021 WL 4171918, at *3 (E.D.N.Y. Sept. 13, 2021) (quoting *Kroshnyi v. U.S. Pack Courier Servs.*, 771 F.3d 93, 103–04 (2d Cir. 2014)); *Leung v. Lotus Ride, Inc.*, 198 A.D.2d 155, 156 (N.Y. App. Div., 1st Dep't 1993); *Tri-City ValleyCats, Inc. v. Houston Astros Inc.*, 151 N.Y.S.3d 617 (Table), at *4 (N.Y. Sup. Ct., N.Y. Cnty. 2021)

Here, the Callens entered the Franchise Agreement on which they base their NYSFSA claims on February 29, 2016.  SAC ¶ 22; *see* Fr. Agmt.  They brought this action on July 24, 2020.  Unless a tolling rule applies, then, the NYSFSA claims are time barred.  Plaintiffs argue that, pursuant to the Franchise Agreement, they timely commenced arbitration in February 26, 2019, and Defendants have short-circuited the proceeding by failing and refusing to pay or deposit their portion of the required arbitration fees, as required by the Franchise Agreement.  SAC ¶ 29.  Plaintiffs contend they had "no choice but to proceed before this Court." *Id.*

The arbitration remains pending, albeit in abeyance.  On February 17, 2022, the Court ordered the parties to show cause on a number of matters related to the arbitration, including whether its ongoing status precludes further litigation in federal court and whether the Court should stay this case until resolution of the arbitration.  Order to Show Cause ("OTSC") [DE 47]. In responding, both parties expressly contend that the Court "should hear and decide this case."  Pl. Resp. to OTSC at 1 ("[T]his Court should and must hear and decide this case rather

than . . . ."); Def. Resp. to OTSC at 1 ("[T]his Court should hear and decide this case rather than staying it pending arbitration.").

The Court finds that each party has waived any right to force its adversary to further arbitrate the matter. *Nagy v. Arcas Brass & Iron Co.*, 242 N.Y. 97, 98 (N.Y. 1926). Their waiver of the right to arbitrate triggers New York Civil Procedure Law and Rules ("CPLR") 204(b), which reads

> Where it shall have been determined that a party is not obligated to submit a claim to arbitration, the time which elapsed between the demand for arbitration and the final determination that there is no obligation to arbitrate is not a part of the time within which an action upon such claim must be commenced.

CPLR 204(b). Section 204(b) inures to the benefit of plaintiffs who put defendants "on timely notice of [their] claims as a result of the demand for arbitration" by exempting them from an overly legalistic application of the statute of limitations. *Joseph Francese, Inc. v. Enlarged City Sch. Dist. of Troy*, 95 N.Y.2d 59, 64 (N.Y. 2000).

Section 204(b) tolled the limitations period applicable to Plaintiffs' claims during the interval between their commencement of arbitration and the Court's finding here that neither party is obligated to arbitrate the matter. *Troeller v. Klein*, 82 A.D.3d 513, 514 (N.Y. App. Div., 1st Dep't 2011) ("To toll the statute of limitations, the arbitration must have been instituted by the parties in order to resolve the present controversy"). Plaintiffs' February 26, 2019 arbitration claims included the NYSFSA claim asserted herein – *i.e.*, Plaintiffs brought their NYSFSA claim less than three years after they signed the Franchise Agreement. In sum, then, the limitations period applicable to that claim has not run; the NYSFSA claim is not time-barred.

Accordingly, Defendants' motion to dismiss the NYSFSA claim as untimely is denied.

### b.   Failure to State a Claim

The NYSFSA applies only to sales or offers to sell franchises in New York State. N.Y. Gen. Bus. Law § 681(12); *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 616 (S.D.N.Y. 2011).   In the Moving Defendants' reading, Plaintiffs "do not allege any offer was made or accepted in New York." Def. Mem. at 18.   This assertion, however, ignores the allegations concerning the "Discovery Day." SAC ¶¶ 20–21, 37– 38.   In February 2016, at the Predecessor Defendants' invitation, Plaintiffs and other prospective franchisees traveled to New York in order to attend a "presentation on the franchise" and "to learn about the franchise." *Id.*   Plaintiffs list several alleged misrepresentations the Predecessor Defendants made at or in connection with that New York presentation. *Id.*   These factual allegations render plausible Plaintiffs' assertion that the Predecessor Defendants made an offer to sell a franchise in New York.

The Moving Defendants' motion to dismiss the NYSFSA claims is denied.

### 2.   Breach of Contract

The Court disagrees with the Moving Defendants' contention that Plaintiffs "fail[ed] to plead they performed their obligations under the franchise agreement." Def. Mem. at 18; *see Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) ("Under New York law, a breach of contract claim requires proof of . . . adequate performance by the plaintiff . . . ."). The SAC reflects that they have.

By way of example, the breach of contract claim is premised partially upon the Predecessor Defendants' breach of Section 14.2. SAC ¶ 45. That section requires "any dispute" to be resolved through binding arbitration. Fr. Agmt. § 14.2(a). Plaintiffs allege they initially brought the claims asserted in this action in an arbitration "before the JAMS Resolution Center," JAMS Case No. 1425029141, on February 26, 2019 – a proceeding Defendants stonewalled by refusing to pay their share of the arbitration fees. SAC ¶¶ 27, 29. These facts render Plaintiffs' compliance with the Franchise Agreement's terms claim plausible.

The Moving Defendants' motion to dismiss the breach of contract claim is denied.

### 3.   Common Law Fraud and Negligent Misrepresentation

The Moving Defendants contend Plaintiffs' fraud allegations fail to meet Rule 9(b)'s heightened pleading standard, are premised in part on an unactionable omission and unactionable predictions, opinions, and puffery. Def. Mem. at 19–20.

New York common law fraud and negligent misrepresentation claim must "satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)); *Woori Bank v. Citigroup Inc.*, 2013 WL 1235648, at *5 (S.D.N.Y. Mar. 27, 2013). Rule 9(b) requires Plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain

why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd.*, 375 F.3d at 187. Representation [10] fails to do so; for example, Plaintiffs fail to plead where and when that statement was made and do not identify its speaker. SAC ¶ 19. But the rest of the SAC does all the above. To specifically highlight one example, Paragraph 20 lists at least nine allegedly fraudulent statements and omissions made by Healy and Parrella, on behalf of ILKB, at the February 2016 Discovery Day event in New York. SAC ¶ 20. The reasons why such statements and omissions were fraudulent are set out in Paragraphs 23 though 25. These allegations clear the heightened pleading threshold set by Rule 9(b).

The Moving Defendants next argue that the alleged misrepresentations concerning Parrella's bankruptcy filing in 2008 and previous lawsuits charging fraud against Parrella and ILKB's predecessor entity are unactionable matters of public record. *See supra* Representations [6], [7]. Under New York law, Plaintiffs will have to show they reasonably or justifiably relied on the Predecessor Defendants' representations in order to succeed on their negligent misrepresentation and common law fraud claims. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (N.Y. 2011) ("[A] claim for negligent misrepresentation requires the plaintiff to demonstrate . . . reasonable reliance on the information."); *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (N.Y. 2011) ("The elements of common law fraud under New York law are . . . justifiable reliance by the plaintiff . . . ."). Reliance is neither justifiable nor reasonable where a plaintiff fails to conduct due diligence into facts not "peculiarly within the [other] party's

knowledge." *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 153–54 (N.Y. 2010) (quoting *Schumaker v. Mather*, 133 N.Y. 590, 596 (N.Y. 1892)). Due diligence requires investigation into "matters of public record," which include "lawsuits and bankruptcy proceedings." *Crotona 1967 Corp. v. Vidu Bros. Corp.*, 925 F. Supp. 2d 298, 312 (E.D.N.Y. 2013); *see Alpha GmbH & Co. Schiffsbesitz KG v. BIP Indus. Co.*, 25 A.D.3d 344, 345 (N.Y. App. Div., 1st Dep't 2006) ("[T]he allegedly concealed information, plaintiff's insolvency and dissolution, were matters of public record that defendant could have discovered by the exercise of ordinary diligence."); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Red Apple Grp., Inc.*, 273 A.D.2d 140, 141 (N.Y. App. Div., 1st Dep't 2000) ("The existence of the litigation that plaintiff alleges defendants should have disclosed was a matter of public record that plaintiff could have been discovered by the exercise of ordinary diligence."). Plaintiffs allege no facts to excuse their failure to investigate Parrella's prior bankruptcy and lawsuits and, therefore, have no actionable fraud or negligent misrepresentation claims based on any omissions related to the same. But the omissions concerning lawsuits involving ILKB's predecessor entity are actionable. The facts plausibly allege that Plaintiffs could not, in the exercise of ordinary intelligence, discover a kickboxing studio franchisor bore any relation to "FC Online Marketing, LLC."

The Moving Defendants also argue that the representations concerning "expected profits, start-up costs, memberships and trial memberships" are unactionable predictions. Def. Mem. at 20; *see supra* Representations [2], [3], [5], [10], [11], [12], [15], [16]. Under New York law, actionable representations "relate to

a past or existing fact, or something equivalent thereto, as distinguished from a mere estimate," which is "something which is hoped or expected to occur in the future." *Zanani v. Savad*, 217 A.D.2d 696, 697 (N.Y. App. Div., 2d Dep't 1995); *see Dragon Inv. Co. II LLC v. Shanahan*, 49 A.D.3d 403, 403 (N.Y. App. Div. 1st Dep't 2008).  As pleaded, Representations [2], [3], [5], [11], [12], and [15] are historical facts concerning ILKB's business as it then was—many such representations expressly referring to "all or the average ILKB franchise."  They are not predictions and therefore are actionable.  *E.g.*, *W. Valley KB Venture, LLC v. ILKB LLC*, 2021 WL 4171918, at *8–9 (E.D.N.Y. Sept. 13, 2021); *ILKB, LLC v. Singh*, 2021 WL 3565719, at *7 (E.D.N.Y. Aug. 12, 2021).  Representations [10] and [16], however, refer to what ILKB "would" do in the future – by contrast, they are unactionable prediction statements.

The Moving Defendants further argue that Representation [14] is unactionable because a "representations about the suitability of the franchise system for absentee ownership[,] clearly qualif[ies] as opinion."  Def. Mem. at 20.  As with predictions, fraud and negligent misrepresentation liability does not arise from opinion statements.  *Mandarin Trading Ltd.*, 16 N.Y.3d at 179.  But stating that the "business worked with an absentee owner model" is not an opinion; it "uses past tense and conveys that current and past franchisees have acted as absentee owners." *Singh*, 2021 WL 3565719, at *7; *e.g.*, *W. Valley KB Venture, LLC*, 2021 WL 4171918, at *9.  Accordingly, Representation [14] is actionable.

The Moving Defendants' motion to dismiss the fraud and negligent misrepresentation claims is granted in part and denied in part. Plaintiffs' fraud and negligent misrepresentation claims as to Representations [10] and [16] are dismissed. Such claims are also dismissed as to Representations [6] and [7], but only to the extent that they concern Parrella and not FC Online Marketing. The motion with respect to the remainder of the Representations is denied.

### 4. CCPA

The Moving Defendants also contend Plaintiffs' CCPA claim both (a) is barred by the statute of limitations and (b) fails to state a claim on which relief can be granted.

### a. Statute of Limitation

CCPA claims are untimely unless they are "commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Colo. Rev. Stat. § 6-1-115.

A franchisee exercising reasonable diligence would not discover the falsity of the Predecessor Defendants' representations until after his franchise opened and began to suffer a state of affairs much worse than that described in the representations. A franchise's "total cost of buildout" and "total cost to open" a studio, for example, would only become suspect once a franchisee knows how much it will

cost him to open his studio.  SAC ¶ 21(a).  A purported break-even point "in 4-6 months" engenders doubt in or around that time, viz. after four to six months of business, at which time a franchisee could tell if he will indeed break even.  *Id.* ¶ 21(b).  Similarly, a franchisee can measure his yearly profits and monthly members against the represented profits-per-year and memberships-per-month figures, at the earliest, twelve months after opening.  *Id.* ¶ 21(d), (e).  Given the nature of the alleged misrepresentations here, then, the limitations period would begin sometime after the franchisee purchased a franchise.

The Complaint alleges that was the situation here.  SAC ¶ 23.  Assuming, for the sake of argument, that Plaintiffs' CCPA claim accrued on the date they signed the Franchise Agreement, February 29, 2016—*i.e.*, the earliest possible date the limitations period would begin—their CCPA claim is timely because they brought the claim within three years thereof.  Specifically, they brought the claim in arbitration on February 26, 2019.  For the same reasons stated in reference to the NYSFSA claims, Plaintiffs' CCPA claim is therefore timely.  The time interval between Plaintiffs' arbitration demand asserting this claim and this Court's finding that the parties have no obligation to arbitrate, pursuant to New York CPLR 204(b), is not counted for statute of limitations purposes; the limitations period did not run during that interval.

Accordingly, the Moving Defendants' motion to dismiss the CCPA claim as untimely is denied.

### b.      Failure to State a Claim

Colorado courts give the CCPA "a liberal construction, relying on the Act's broad purpose and scope." *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998). "To prove a private cause of action under the CCPA, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003).  The Moving Defendants target the third element, contending that that the alleged practices underlying the dispute do not significantly impact the public. Def Mem. at 20–21.  Courts assess public impact by considering "at least three factors": "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006) (citing *Rhino Linings*, 62 P.3d at 149).

Plaintiffs plausibly allege facts sufficient to make out the CCPA's "public impact" element.  Firstly, through these alleged misrepresentations and omissions, the Predecessor Defendants "sold dozens of franchises to the public," at least fifteen

of which failed between 2014 and 2015. SAC ¶¶ 18(d), 59. Secondly, "there is no allegation that Plaintiffs or other prospective [franchisees] were sophisticated business people . . . or anything other than people with money to invest." *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1242 (D. Colo. 2010) (citing *Rhino Linings*, 62 P.3d at 150). Thirdly, Defendants allegedly held a public "Discovery Day" event in New York attended by, among other prospective franchisees, Plaintiffs – who reside in Colorado. SAC ¶ 20. Additionally, Defendants circulated a "Franchise Disclosure Document" dated March 26, 2015 to "substantial numbers" of potential franchisees. The alleged misrepresentations and omissions made at the Discovery Day and in the Franchise Disclosure Document are not specific to Plaintiffs' contemplated franchise in Colorado; rather, they are statements about the ILKB business at large and applicable to "all or the average" franchise. *E.g.*, Representation [5]. Plaintiffs are therefore not using the CCPA "to remedy a purely private wrong." *See Crowe*, 126 P.3d at 208.

Taking the allegations as true, which the Court must do on a motion to dismiss, Plaintiffs have "nudged their [CCPA] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Moving Defendants' motion to dismiss the CCPA claim is denied.

### 5. Successor Liability

The Successor Defendants argue that Plaintiffs fail to state a claim of successor liability against them. "As a general rule," New York law does not hold an entity "purchasing the assets of another . . . liable for the debts and liabilities of the seller."

*Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 525 (S.D.N.Y. 2018), *aff'd*, 774 Fed. App'x 714 (2d Cir. 2019).  The general rule does not apply, however, to "(1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 702 (2d Cir. 2009); *see Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244–45 (N.Y. 1983).  "Thus, for example, 'when a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the predecessor's operations, the successor may be held to have assumed its predecessor's . . . liabilities, notwithstanding the traditional rule.'" *Aguas Lenders Recovery Grp.*, 585 F.3d at 702 (2d Cir. 2009) (ellipses in original) (quoting *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006)).

Plaintiffs plausibly allege successor liability under the "de facto merger" and/or the "mere continuation" exceptions.  *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir. 2003) ("Some courts have observed that the mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception."); *e.g.*, *Snowbridge Advisors LLC*, 2022 WL 667606, at *12–13; *Time Warner Cable, Inc. v. Networks Grp., LLC*, 2010 WL 3563111, at *6–7 (S.D.N.Y. Sept. 9, 2010).

As an initial matter, Plaintiffs plausibly allege "continuity of ownership," which is the "touchstone of the de facto merger concept and thus a necessary

predicate." *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 150 A.D.3d 490, 490–91 (N.Y. App. Div., 1st Dep't 2017). "Continuity of ownership 'exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets.'" *Id.* (quoting *In re New York City Asbestos Litig.*, 15 A.D.3d 254, 256 (N.Y. App. Div., 1st Dep't 2005)). "Stated otherwise, continuity of ownership describes a situation where the parties to the transaction become owners together of what formerly belonged to each." *Id.* Here, ILKB's founder and owner, Parrella, allegedly retained an interest in its successor ILKB, Too. SAC ¶¶ 10, 18(a), 23(a), 32, 75.

Other indicia of a de facto merger are present. By way of comparison, the de facto merger in *Burgos v. Pulse Combustion, Inc.* resembles the one at bar. 227 A.D.2d 295, 295–96 (N.Y. App. Div., 1st Dep't 1996). Of note, the *Burgos* successor (i) "purchased almost all of the predecessor corporation's fixed assets and intangibles," (ii) "assumed a name nearly identical to that of the predecessor corporation," (iii) retained "at least one officer from the predecessor corporation," and (iv) manufactured the "same products . . . at the plants transferred under the purchase agreement." *Id.* The *Burgos* Court held that such facts could establish successor liability. Here, Plaintiffs allege the Successor Defendants (i) purchased "all assets" of ILKB, (ii) "us[e] the ILKB or iLoveKickboxing name," (iii) retained ILKB's "officer, director, executive and/or manager" Parrella, and (iv) "continue [ILKB's]

business." SAC ¶¶ 6, 10, 31, 32, 75; Ex. B to SAC.  Plaintiffs, then, have pleaded sufficient facts that, if true, would establish successor liability.

To the extent the Successor Defendants argue successor liability pursuant to a de facto merger requires ILKB's dissolution, New York law holds otherwise.  *Holme v. Global Minerals & Metals Corp.*, 63 A.D.3d 417, 418 (N.Y. App. Div., 1st Dep't 2009) (citing *Fitzgerald v. Fahnestock & Co.*, 286 A.D.2d 573, 575 (N.Y. App. Div., 1st Dep't 2001)).  Moreover arguing ILKB is "still a going concern" disputes the facts alleged. *Compare* Def. Reply at 6 (emphasis removed), *with* SAC ¶ 32.  On a motion to dismiss, however, this Court must assume the truth of all such facts.

Successor liability is a "highly fact-specific" inquiry that, on the "present record, cannot be resolved with assurance in favor of one party or the other." *Aguas Lenders Recovery Grp.*, 585 F.3d at 703.  The motion to dismiss the Successor Defendants is denied.

## CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is denied as the Complaint plausibly alleges successor liability against the Successor Defendants.

Defendants' motion to dismiss Plaintiff Golden Polar Bear, LLC for lack of standing is granted with respect to all clams but the CCPA claim, which the Moving Defendants do not challenge, because no proof of assignment has been offered.

Defendants' motion to dismiss for failure to state a claim is granted in part and denied in part.  The fraud and negligent misrepresentation claims survive except as to those arising from Representations [10], [16], and [6] and [7] to the extent that [6]

and [7] concern Parrella and not FC Online Marketing; the remainder of the causes

of action survive because the SAC's factual allegations plausibly state a claim.

**SO ORDERED.**

Dated: Central Islip, New York                    s/ Denis R. Hurley
        June 9, 2022                                Denis R. Hurley
                                  United States District Judge